William Avery GRIFFIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00159–CR.

Court of Appeals of Texas,
Texarkana.

Submitted July 31, 2001.

Decided Aug. 21, 2001.

Ebb B. Mobley, Longview, for appellant.

Tim Cone, Upshur County Dist. Atty., Angela J. Norton, Asst. Dist. Atty., Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

An Upshur County jury convicted William Avery Griffin of possessing more than four but less than 200 grams of heroin. His punishment was enhanced by a prior conviction, and he was sentenced to twenty years' detention and fined $1,000.00. In a single point of error, Griffin contends that the trial court erred by failing to grant his motion to suppress the heroin.

The testimony at the suppression hearing revealed that on September 30, 1999, Agent Ron Benge, of the Drug Enforcement Administration (DEA) Task Force in Tyler, received a tip from an undisclosed informant that James Carswell and Griffin would be traveling in an aqua and silver S–10 pickup, license plate CT6–997, from Dallas to Gilmer and would be carrying heroin. Benge testified that the informant had provided reliable tips to him on prior occasions. Benge was in an unmarked car and could not stop the pickup, so he contacted Sergeant Mark Case, a Gilmer police officer who was in a marked police vehicle, and informed him of the tip so that Case could make the stop. Acting on Benge's tip, Case waited by South Highway 155 for the two-tone pickup to pass. When Case saw the vehicle, he followed it for some distance and saw the vehicle's left tires cross the yellow center stripe. The vehicle then returned to its lane, signaled, and made a left turn from a designated left turn lane. Case testified that the vehicle's failure to maintain a single marked lane raised suspicions in his mind that the driver might be intoxicated. Case testified that he then stopped the vehicle based on both the information provided to him by Benge and the apparent traffic violation.

Griffin was driving the vehicle and got out after he was stopped. Case asked Griffin for his driver's license and proof of insurance. Griffin gave Case his driver's

license, but in order to find the insurance, he had to awaken Carswell, the owner of the vehicle, who was sleeping in the passenger seat. While Carswell was searching through the glove compartment for the insurance papers, Case saw him remove a brown paper bag from the glove compartment and place it by his feet. Case then questioned Griffin and Carswell separately about their travel route. Both stated that they were returning from Dallas after dropping off a car engine there. Case testified that Griffin acted nervous and evasive and that he even mentioned this nervousness to Griffin. Case asked Griffin for permission to search his pockets, and Griffin consented. Case found no narcotics on Griffin's person. After confirming with Griffin that Carswell was the owner of the vehicle, Case asked Carswell for consent to search the vehicle, which he testified Carswell gave voluntarily. Case searched the car and found two unopened boxes of Dormin, a cutting agent, in the brown paper bag on the passenger's floorboard. Case stated that Dormin by itself did not raise his suspicions, but he also found a package of Kool cigarettes near the driver's seat belt buckle. He felt the package, noticed a hard object inside, opened the package, and discovered what he believed to be black tar heroin. Both Griffin and Carswell denied that the cigarette package was theirs, but Carswell told Case that Griffin smoked Kools, and Case saw a package of Merit 100s in Carswell's front shirt pocket. Griffin was arrested and charged with possession of heroin.[1]

Griffin filed a motion to suppress the heroin on the ground that the detention was improper because it was based on a tip from an unidentified informant, and on the ground that the search was improper because the police did not obtain a warrant. The trial court denied the motion.

■ At a suppression hearing, the trial court is the trier of fact and the judge of the credibility of the witnesses, and we review its ruling under an abuse of discretion standard. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, where the underlying facts are undisputed, we review mixed questions of law and fact de novo. Hernandez v. State, 957 S.W.2d 851 (Tex.Crim.App.1998); see Guzman v. State, 955 S.W.2d at 87–89.

■ Griffin first argues that the tip given to Case by the DEA agent did not authorize Case to stop him without a warrant; however, Case articulated another reason for the stop—a traffic violation. If the officer made a valid traffic stop, the existence of another motive for the stop is irrelevant because the prohibition against pretextual stops has been abandoned in Texas. Garcia v. State, 827 S.W.2d 937, 944 (Tex.Crim.App.1992); Taylor v. State, 20 S.W.3d 51, 56 (Tex.App.—Texarkana 2000, pet. ref'd). An officer may lawfully stop a motorist who commits a traffic violation. McVickers v. State, 874 S.W.2d 662, 664 (Tex.Crim.App.1993); Armitage v. State, 637 S.W.2d 936, 939 (Tex.Crim.App. 1982). If the officer has a reasonable basis for believing that a person has committed a traffic violation, the officer may legally stop the person. Zervos v. State, 15 S.W.3d 146, 151 (Tex.App.—Texarkana 2000, pet. ref'd). A belief is reasonable if it is based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the stop. Davis v. State, 947 S.W.2d 240, 242 (Tex.Crim.App.1997) (quoting Terry v.

---

1. While Case searched Griffin's car, Benge, Jones (who was in the car with Benge), and perhaps some other DEA agents came to the location of the stop and remained in their cars observing the search. Case revealed some of the suspected heroin to Benge during the stop.

*Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

At the suppression hearing, Case testified that the left tires of the vehicle Griffin was driving crossed the yellow line marking the center of the road and that he stopped the vehicle in part because of this violation. Based on this observation, Case had reasonable suspicion that a traffic offense had been committed, and the detention was proper.

 Griffin contends that such a minor traffic infringement does not warrant a traffic stop and cites three cases for that proposition: *Gearing v. State,* 685 S.W.2d 326 (Tex.Crim.App.1985); *Hernandez v. State,* 983 S.W.2d 867 (Tex.App.—Austin 1998, pet. ref'd); *State v. Tarvin,* 972 S.W.2d 910 (Tex.App.—Waco 1998, pet. ref'd). *Gearing* involved the detention of a man sitting in a parked car with the motor running, not a traffic violation, so we will direct our discussion to *Hernandez* and *Tarvin.* In both *Hernandez* and *Tarvin,* the appellate courts held that officers testifying to the bases of traffic stops failed to articulate reasonable suspicion that a traffic offense had been committed, because they failed to state that they had reason to believe that the defendants had moved from their lanes of traffic in an *unsafe manner* as required by TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999). *Hernandez v. State,* 983 S.W.2d at 871; *State v. Tarvin,* 972 S.W.2d at 911. The officers in *Hernandez* and *Tarvin* saw the defendants crossing or touching the white traffic lines that divide lanes going in the same direction. In the present situation, Case articulated facts that led him to believe Griffin had crossed the yellow traffic line dividing the traffic traveling in opposite directions. TEX. TRANSP. CODE ANN. § 545.051 (Vernon 1999) states that a vehicle operator shall drive on the right half of the roadway. Traveling across the yellow line into oncoming traffic is a traffic violation in itself and does not require the additional element of an unsafe maneuver by the driver as does TEX. TRANSP. CODE ANN. § 545.060. Case articulated reasonable facts leading him to suspect a traffic violation, and the detention was therefore proper.

 Next, Griffin challenges Case's search of the vehicle, and contends that it was an impermissible warrantless search. The United States Constitution guarantees citizens the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. The Texas Constitution also guarantees this right. TEX. CONST. art. I, § 9. Generally, a warrant based on probable cause is required for a search; however, because of the mobility of a vehicle and the lessened expectation of privacy, only probable cause is required to search a vehicle. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Battle v. State,* 105 Tex.Crim. 568, 290 S.W. 762 (1927).

 Consent to search is one of the well-established exceptions to the constitutional requirements of either a warrant or probable cause. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ibarra,* 953 S.W.2d 242, 243 (Tex.Crim.App.1997). The test for a valid consent to search is that the consent must be voluntary, and that is a question of fact to be determined from all the circumstances. *Ohio v. Robinette,* 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (quoting *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. 2041). The State has the burden to prove valid consent by clear and convincing evidence. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex. Crim.App.1985).

 At the suppression hearing, Case testified that he asked Carswell, the owner

of the vehicle, for consent to search the vehicle. Case stated that he did not threaten, coerce, or promise Carswell anything in return for his consent and that Carswell consented voluntarily. Based on this undisputed testimony from Case establishing consent, we find that the trial court properly denied the motion to suppress based on the lack of a warrant.

For the reasons stated, the judgment of the trial court is affirmed.