In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00168-CR
______________________________


JAMES HILTON BOND, JR., Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 276th Judicial District Court
Marion County, Texas
Trial Court No. F13711


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â James Hilton Bond, Jr., appeals from his conviction by the trial court on his plea of guilty
to two counts of aggravated robbery. The trial court sentenced Bond to fifty years' imprisonment on
each count, to run concurrently. We dismiss Bond's appeal for want of jurisdiction.
Â Â Â Â Â Â Â Â Â Â Â Â The trial court filed a certification, in accordance with Rule 25.2(a)(2), that this case "is a
plea-bargain case, and the defendant has NO right of appeal." Rule 25.2(a)(2) states, in pertinent
part: 
(2) . . . A defendant in a criminal case has the right of appeal under Code of
Criminal Procedure article 44.02 and these rules. The trial court shall enter a
certification of the defendant's right of appeal in every case in which it enters a
judgment of guilt or other appealable order.
Tex. R. App. P. 25.2(a)(2). If a certification showing that the appellant has the right to appeal is not
made a part of the appellate record, we must dismiss the case unless the record affirmatively
indicates that the appellant may have the right to appeal. Tex. R. App. P. 25.2(d); see Greenwell v.
Court of Appeals for Thirteenth Judicial Dist., 159 S.W.3d 645, 649 (Tex. Crim. App. 2005); Dears
v. State, 154 S.W.3d 610, 612 (Tex. Crim. App. 2005). We have examined the clerk's record to
determine whether the trial court's certification is defective. See Dears, 154 S.W.3d at 613. Nothing
in the record indicates the certification is defective. This Court lacks jurisdiction over this appeal. 

Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â We dismiss the appeal for want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â August 31, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â September 1, 2006

Do Not Publish



contest the search
in three ways; he may show that he was lawfully on the premises at the time of the search; he may
show that his possession of the seized objects is itself an essential element of the offense with which
he is charged; he may show a proprietary or possessory interest in the premises searched or the items
seized." Id. at 941. 

 However, since Kleasen was decided, the United States Supreme Court has dispensed with
the "rubric of standing used in Jones." See Rakas v. Illinois, 439 U.S. 128, 140 (1978). The current
standard for whether a defendant has standing to contest a search under the Fourth Amendment is
whether the defendant had a reasonable expectation of privacy. Although "more properly placed
within the purview of substantive Fourth Amendment law than within that of standing," a defendant
has "standing" to assert a claim challenging the admission of evidence obtained by a governmental
intrusion only if he had a legitimate expectation of privacy in the place invaded. Rakas, 439 U.S.
at 140-43; see Richardson v. State, 865 S.W.2d 944, 948-49 (Tex. Crim. App. 1993); Granados v.
State, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). The defendant in a possessory offense no longer
has "automatic" standing and must prove he had as reasonable an expectation of privacy as any other
defendant. See United States v. Salvucci, 448 U.S. 83, 92 (1980). "While property ownership is
clearly a factor to be considered in determining whether an individual's Fourth Amendment rights
have been violated . . . property rights are neither the beginning nor the end" of the inquiry. Salvucci,
448 U.S. at 91 (citations omitted). 

 We disagree with the State that Tilley lacks standing because he denied ownership of the
items seized. Whether a defendant asserts an ownership interest in the item seized may be relevant
to a challenge of the seizure itself, but as long as the defendant can show a reasonable expectation
of privacy in the area searched, a denial of ownership of the seized items does not defeat standing. 
Chapa v. State, 729 S.W.2d 723, 725 n.1 (Tex. Crim. App. 1987). Thus, the fact that Tilley denied
ownership of the seized items does not deprive him of standing, provided that he can establish a
reasonable expectation of privacy.

 The defendant has the burden of proving a legitimate expectation of privacy. Villarreal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); see Handy v. State, 189 S.W.3d 296, 299 & n.2
(Tex. Crim. App. 2006) (disavowing holding in Russell v. State, 717 S.W.2d 7, 9 n.6 (Tex. Crim.
App. 1986) (that "[a] mere allegation by a defendant that he was a victim of an illegal search or
seizure, if not disputed by the State, is sufficient to establish standing to challenge a search or
seizure")). "Whether a defendant has standing to contest a search and seizure is a question of law
which we will review de novo." Parker v. State, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). 

 Because standing is an element of a Fourth Amendment claim, the State may raise the issue
of standing for the first time on appeal, even when the defendant is the prevailing party in the trial
court. Kothe v. State, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004); State v. Klima, 934 S.W.2d 109,
110-11 (Tex. Crim. App. 1996). Further, an appellate court "may raise the issue of standing on its
own; it may analyze that issue as a part of the Fourth Amendment claim presented; or it may
conclude that the State has forfeited that argument because it failed to raise it in the trial court." (3) 
Kothe, 152 S.W.3d at 60 (footnotes omitted) (citations omitted). Although the State did raise the
issue of standing, the State has not argued that Tilley lacked a reasonable expectation of privacy in
the truck. We will, nevertheless, address whether Tilley established a reasonable expectation of
privacy.

 Whether a defendant has a reasonable expectation of privacy is determined by a two-pronged
test. Parker, 182 S.W.3d at 925; see Smith v. Maryland, 442 U.S. 735 (1979). "First, we ask
whether the defendant had a subjective expectation of privacy in the place searched. If the answer
is yes, then we ask whether the defendant's expectation of privacy is one that society recognizes as
reasonable or justifiable under the circumstances." Parker, 182 S.W.3d at 926. 

 Under the second prong, we must determine whether the accused's subjective expectation was
one that society was prepared to recognize as objectively reasonable. In making this determination,
courts often examine the following factors: (1) whether the accused had a property or possessory
interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he
had complete dominion or control and the right to exclude others; (4) whether, before the intrusion,
he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place
to some private use; and (6) whether his claim of privacy is consistent with historical notions of
privacy. Villarreal, 935 S.W.2d at 138.

 In this case, Tilley had--at a minimum--a possessory interest in the truck in which the
methamphetamine pipe was located. (4) Tilley testified that he had sold the truck but that the title had
not yet been transferred to the purchaser. The truck had broken down and the son of the purchaser
had brought it back to Tilley for repairs. At the time of the events in question, the truck was not
operating. Further, the truck was located on the curtilage of Tilley's residence. (5) Under the facts of
this case, we conclude Tilley had standing to challenge a search of an inoperable truck in his
possession and parked on the curtilage of his property. Such an expectation of privacy is the kind
of privacy expectation that society recognizes as reasonable. If the jury had chosen not to believe
Officer Burton's version of events, (6) Tilley established a reasonable expectation of privacy.

The Trial Court Erred in Refusing the Requested Instruction

 Tilley contends the trial court erred in denying the requested instruction because there was
a fact issue concerning 1) whether Officer Burton had reasonable suspicion to extend the encounter (7)
and 2) whether Officer Burton could see the drug paraphernalia through the tinted windows of the
truck. Tilley claims the drug paraphernalia was not in plain view because the tint of the windows
on the truck prevented observation of the interior. 

 The defendant alleging a Fourth Amendment violation bears the burden of producing some
evidence that rebuts the presumption of proper police conduct. Amador v. State, 221 S.W.3d 666,
672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a
search or seizure occurred without a warrant." (8) Id. The burden then shifts to the State to prove that
the search or seizure was nonetheless reasonable under the totality of the circumstances. Id. at
672-73.

 Because the drug paraphernalia was in "plain view," the State argues there was no Fourth
Amendment violation. "What a person knowingly exposes to the public, even in his own home, is
not a search subject to Fourth Amendment protection." Duhig v. State, 171 S.W.3d 631, 636 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd). If the property is in ''plain view,'' it may be seized
without a warrant provided the officer had a legitimate reason to be where he was and the officer had
probable cause to believe that the object was contraband or evidence of a crime. Coolidge, 403 U.S.
at 468-72; see Colorado v. Bannister, 449 U.S. 1, 3 (1980). If an article is already in plain view,
neither its observation nor its seizure would involve any invasion of privacy. Walter v. State, 28
S.W.3d 538, 541 (Tex. Crim. App. 2000); see Rawlings v. Kentucky, 448 U.S. 98, 106 (1980).

 The fact that the officer intentionally looked into the truck or was forced to use a flashlight
as a visual aid to see through the tinted glass does not affect the application of the plain view
doctrine. The Fourth Amendment does not require the discovery of evidence to be inadvertent. 
Horton, 496 U.S. at 140. A vision enhancement device such as a flashlight also does not affect the
application of the plain view doctrine. Texas v. Brown, 460 U.S. 730, 740 (1983) ("the use of
artificial means to illuminate a darkened area simply does not constitute a search"); Duhig, 171
S.W.3d at 637. 

 The Texas Code of Criminal Procedure requires a jury instruction if the evidence raises an
issue concerning whether evidence is the result of an unlawful search. Article 38.23(a) provides:

 No evidence obtained by an officer or other person in violation of any provisions of
the Constitution or laws of the State of Texas, or of the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the
trial of any criminal case.


 In any case where the legal evidence raises an issue hereunder, the jury shall
be instructed that if it believes, or has a reasonable doubt, that the evidence was
obtained in violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.


Tex. Code Crim. Proc. Ann. art. 38.23. An instruction pursuant to Article 38.23 is mandatory
when there is a factual dispute regarding the legality of the search. Brooks v. State, 642 S.W.2d 791,
799 (Tex. Crim. App. [Panel Op.] 1982); Malone v. State, 163 S.W.3d 785, 802 (Tex.
App.--Texarkana 2005, pet. ref'd); Howes v. State, 120 S.W.3d 903, 907 (Tex. App.--Texarkana
2003, pet. ref'd). A fact issue existed here; Officer Burton testified that he had seen the pipe through
the window of the truck and that the pipe was, thus, in plain view; Tilley said that Burton could not
have seen the pipe through the window because of the tinting on the window which prevented such
a viewing. If Burton simply opened the door of the truck without first having seen the
methamphetamine pipe in the back floorboard, it could have been an illegal search. 

 The State argues that the facts leading up to the seizure of the contraband are not in dispute
and that the only disputed issue was whether Officer Burton planted the contraband in the truck. 
There was a factual dispute concerning whether Officer Burton could see through the tinted window
of the truck. Tilley testified the truck was equipped with a type of tinting referred to as "limo" tint
which is a "higher grade than any 10 percent" and cannot be seen through. If the jury had chosen to
believe Tilley's testimony, the jury may have concluded Officer Burton did not see the pipe through
the tinted windows. If Officer Burton could not see through the tinted windows, the plain view
doctrine is inapplicable. When "a defendant raises a factual dispute about whether evidence was
illegally obtained, an Article 38.23 instruction must be included in the jury charge." Pickens v. State,
165 S.W.3d 675, 680 (Tex. Crim. App. 2005). As it pertains to a request for an instruction under
Tex. Code Crim. Proc. Ann. art. 38.23, "A fact issue about whether evidence was legally obtained
may be raised 'from any source, and the evidence may be strong, weak, contradicted, unimpeached,
or unbelievable.'" Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting Wilkerson
v. State, 933 S.W.2d 276, 280 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd)). The jury should
have been afforded this option; therefore, the trial court erred in denying the requested jury
instruction.

 When error occurs in failing to properly instruct the jury, our review of the charge is under
the Almanza standard. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh'g). An erroneous or incomplete jury charge does not result in automatic reversal of the
conviction or punishment. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Instead,
the appellate court "must determine whether sufficient harm resulted from the error to require
reversal." Id. at 731-32; Almanza, 686 S.W.2d at 171. The level of harm an appellant must
demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant
properly objected to the error at trial. Abdnor, 871 S.W.2d at 732. When, as in this case, (9) the
appellant properly objected at trial, reversal is required if the error is "calculated to injure the rights
of defendant"--the appellant need only demonstrate "some harm" on appeal. Id.; see also Almanza,
686 S.W.2d at 171. The degree of harm shown by the appellant must be actual, not merely
theoretical. Almanza, 686 S.W.2d at 174. Nonetheless, the presence of any harm, regardless of the
degree, is sufficient to require reversal of the conviction. Id.

 As discussed above, if the search of the truck was illegal, the drugs discovered in the
subsequent pat-down search are "fruit of the poisonous tree." The drugs are the sole evidence
supporting the verdict. A rational juror could have concluded that Officer Burton could not see
through the tinted windows. If a juror reached such a conclusion, the juror could not consider the
sole evidence that Tilley possessed a controlled substance. We cannot say with confidence that the
error did not cause some harm. 

 As discussed above, Tilley had standing to challenge the search of the inoperable truck
parked on the curtilage of his property. Since there was a fact issue concerning whether Officer
Burton could see through the windows of the truck, Tilley had an absolute right to a jury instruction. 
The trial court erred in failing to so instruct the jury, and the error resulted in some harm. 

 For the reasons stated, we reverse the judgment of the trial court and remand this case to the
trial court for further proceedings consistent with this opinion.



 Bailey C. Moseley

 Justice


Date Submitted: July 30, 2007

Date Decided: September 5, 2007


Do Not Publish
1. Tilley denied that Officer Burton told him where to stand. When asked: "Did the officer
tell you to stay where you were at?" Tilley responded, "No, sir, he never did."
2. The State also argues that Tilley lacks standing to challenge the legality of the arrest. If the
search of the truck violated the Fourth Amendment, the drugs discovered after Tilley was arrested
should also have been excluded. Under Article 38.23, evidence must be excluded once a causal
connection between the illegality and the evidence is established. Roquemore v. State, 60 S.W.3d
862, 870 (Tex. Crim. App. 2001); State v. Daugherty, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996). 
There is a clear causal connection between the search of the truck and the discovery of the drugs. 
Tilley was arrested for items seized during the search of the truck and then subsequently searched. 
The second search is a direct result of the allegedly illegal search of the truck. The taint of the
allegedly illegal search is also not sufficiently attenuated from the subsequent arrest and pat-down
search. See Daugherty, 931 S.W.2d at 270 (suggesting Article 38.23 incorporates the attenuation
of taint doctrine); State v. Johnson, 871 S.W.2d 744, 751 (Tex. Crim. App. 1994) (the attenuation
doctrine is a "method of determining whether evidence was 'obtained' in violation of the law").
3. Dix and Dawson suggest the standard for whether a standing argument was forfeited should
focus on whether the defendant was disadvantaged by the State's failure to challenge the standing
in the trial court. See 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 42.25 (2006). 
4. A person can establish a reasonable expectation of privacy concerning property belonging
to others but in his possession. See United States v. Richards, 638 F.2d 765, 770 (5th Cir. 1981)
(defendant who picked up package for another person had standing); Wilson v. State, 692 S.W.2d
661, 670-71 (Tex. Crim. App. 1984) (op. on reh'g) (defendant who had borrowed car with the
owner's consent had a reasonable expectation of privacy in the automobile). 
5. "
Curtilage" is "the land immediately surrounding and associated with the home" and
warrants the same Fourth Amendment protections that attach to the home. Oliver v. United States,
466 U.S. 170, 180 (1984); Gonzalez v. State, 588 S.W.2d 355, 360 (Tex. Crim. App. [Panel Op.]
1979). We note there is no legitimate expectation of privacy in an open field, or "any unoccupied
or underdeveloped area outside of the curtilage" of a dwelling. Oliver, 466 U.S. at 180. The State
does not argue the truck was in an open field.
6. As discussed below, if the drug paraphernalia was in plain view, Tilley did not have a
reasonable expectation of privacy.
7. Tilley does not dispute that Officer Burton had reasonable suspicion to initiate the encounter. 
Tilley does argue, though, that Officer Burton lacked reasonable suspicion to continue the encounter
after Tilley provided Officer Burton both his identification card and title to the Ford Taurus and the
dispatcher had informed Officer Burton that Tilley had no outstanding warrants and the car was
registered to Tilley. The record contains two factual disputes concerning 1) whether Tilley deposited
an object in the truck or went to the truck to retrieve a pack of cigarettes and 2) whether Officer
Burton told Tilley to stand at a specified location. If the jury believed Tilley's testimony, Officer
Burton may have lacked reasonable suspicion to prolong the encounter. See Ohio v. Robinette, 519
U.S. 33, 40 (1996) (Ginsburg, J., concurring) (the stop may not be used as a "fishing expedition for
unrelated criminal activity"); Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997); cf. United
States v. Valadez, 267 F.3d 395, 399 (5th Cir. 2001) (Garwood, J., concurring) (suggesting prolonged
detention-based standard operating procedures may be reasonable under certain circumstances). 
Because we find there is a fact issue concerning whether the drug paraphernalia was in plain view,
it is not necessary for us to decide whether the brief extension of the encounter was reasonable as
a matter of law or whether the factual disputes created a fact issue. 
8. A warrant based on probable cause is normally required for a search. We note, because of
the mobility of a vehicle and the lessened expectation of privacy, an officer may stop and search a
moving vehicle without a warrant if probable cause has been developed. Carroll v. United States,
267 U.S. 132 (1925); Griffin v. State, 54 S.W.3d 820, 823 (Tex. App.--Texarkana 2001, pet. ref'd). 
However, the vehicle in this case was parked on private property. See Coolidge v. New Hampshire,
403 U.S. 443, 464 n.20 (1971) (plurality op.) (exigent circumstances justifying the automobile
exception did not exist for a vehicle parked in a private driveway). But see Horton v. California, 496
U.S. 128, 137 (1990) (noting Justice Harlan's vote in Coolidge "may have rested on the fact that the
seizure of the cars was accomplished by means of a warrantless trespass on the defendant's
property"). The State does not argue that the automobile exception applies. 
9. Although Tilley did submit a requested instruction to the trial court, the proposed instruction
does not include an application paragraph or explain the plain view doctrine. However, Tilley did
object to the charge, request an instruction pursuant to Article 38.23, identify the reasons that the
charge was deficient, and secure a ruling from the trial court. See Tex. Code Crim. Proc. Ann. art.
36.14 (Vernon 2007). The objections and charge conference were recorded by the court reporter. 
At the charge conference, Tilley argued that Officer Burton could not see through the windows and
that the reasonableness of the encounter ended when the officer was provided with proof of
ownership of the vehicle and informed there were no outstanding warrants. Error was preserved for
appellate review.