ACCEPTED
03-14-00033-CR
4315628
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/27/2015 2:03:24 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00033-CR

_____

**IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/27/2015 2:03:24 PM
JEFFREY D. KYLE
Clerk

_____

MICHAEL MARRERO, Appellant

v.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the County Court at Law Number Two
Cause Number 2013CR0098
Comal County, Texas

_____

**BRIEF FOR THE STATE**

_____

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Abigail L. Whitaker**
**SBN 24051915**
**Assistant Criminal District Attorney**
**150 North Seguin Avenue, Suite 307**
**New Braunfels, Texas 78130**
**(830) 221-1300**
**Fax (830) 608-2008**
**E-mail: whitaa@co.comal.tx.us**
**Attorney for the State**

**Oral Argument Is Requested**

## Identity of Parties and Counsel

**Attorneys for the Appellant, Michael Marrero**
The Law Offices of Jamie Balagia
Jessica E. Bernstein **(AT TRIAL)**
Hallye C. Braud & Sean Simpson **(ON APPEAL)**
313 South Main
San Antonio, Texas 78204
Telephone: (210) 394-3833
Facsimile: (210) 271-3833
Email: hallye@dwidude.com


**Attorneys for the Appellee, The State of Texas**
Comal County Criminal District Attorney's Office
Abigail L. Whitaker & Ryan V. Vickers **(AT TRIAL)**
Abigail L. Whitaker **(ON APPEAL)**
150 North Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: whitaa@co.comal.tx.us

# Table of Contents

Identity of  Parties and Counsel ................................................................... ii

Table of Contents ..................................................................................... iii

Index of Authorities ................................................................................. iv

Issues Presented ........................................................................................1

Statement of Facts .....................................................................................1

Summary of the Argument..........................................................................3

Argument...................................................................................................4

    **I. Standard of Review** .....................................................................4

    **II. Reasonable Suspicion for Traffic Violation** ............................5

    **III. Reasonable Suspicion for DWI** ...............................................8

Prayer ......................................................................................................15

Certificate of Service ...............................................................................16

Certificate of Compliance ........................................................................17

## Index of Authorities

### Statutes

Tex. Transp. Code Ann. § 545.051 (West, Westlaw through 2013 Sess.)................................................................5, 6, 7

Tex. Transp. Code Ann. § 545.060 (West, Westlaw through 2013 Sess.)................................................................5, 6, 7

### Cases

*Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007)..............................8, 9, 13

*Dowler v. State*, 44 S.W.3d 666 (Tex. App.—Austin 2001, pet. ref'd)...................................................................5, 10, 11

*Doyle v. State*, 265 S.W.3d 28 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)..........................................................5, 6

*Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010) .........................................5

*Fox v. State*, 900 S.W.2d 345 (Tex. App.—Fort Worth 1995), *pet. dism'd, improvidently granted*, 930 S.W.2d 607 (Tex. Crim. App. 1996)..........................................4, 9, 11, 12, 13, 14

*Griffin v. State*, 54 S.W.3d 820 (Tex. App.—Texarkana 2001, pet. ref'd)...................................................................5, 6

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) .......................................4

*Hernandez v. State*, 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd)..................................................................9, 10

*Johnson v. State*, 722 S.W.2d 417 (Tex. Crim. App. 1986) *overruled on other grounds by McKenna v. State*, 780 S.W.2d 797 (Tex. Crim. App. 1989) ......................................................6, 9

*Johnson v. State*, 365 S.W.3d 484 (Tex. App.—Tyler 2012, no pet.) ..........................................................................6

*Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *abrogated on other grounds by Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ....................................................................6, 7

*Ornelas v. United States*, 517 U.S. 690 (1996)................................................12, 14

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) ...............................................4

*Tanner v. State*, 228 S.W.3d 852 (Tex. App.—Austin 2007, no pet.) ..............................................................................8, 9, 12, 13, 14

*Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875 (Tex. App.—Austin 1999, no pet.) ...................................................................6, 7

*United States v. Arvizu*, 534 U.S. 266 (2002) .....................................................8, 9, 12

*United States v. Sokolow*, 490 U.S. 1 (1989)................................................................9

*Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997)............................................8

## Issues Presented

1. Did reasonable suspicion exist to conduct a traffic stop on Appellant for failing to maintain his vehicle on the right-hand side of the roadway in accordance with Texas Transportation Code Section 545.051?

2. Did reasonable suspicion exist to conduct a traffic stop on Appellant for driving while intoxicated in violation of Texas Penal Code Section 49.04?

## Statement of Facts

Late at night on May 28, 2012, Appellant Michael Marrero was driving south on FM 306, a two-lane road with a double-yellow line marking the center divide (1 R.R. at 8-9, 16-17). Comal County Sheriff's Deputies Eric Lehr and Gabriel Sepeda were traveling north on the same road (*id.*; 1 R.R. at 8-9). Deputy Sepeda was driving and Corporal Lehr was riding in the passenger seat as a Field Training Officer (1 R.R. at 8). One other vehicle was also traveling north a few car lengths in front of the deputies' vehicle (1 R.R. at 10).

Both Deputy Sepeda and Corporal Lehr observed the vehicle in front of them swerve onto the shoulder of the roadway as Appellant's southbound vehicle passed it (1 R.R. at 10, 27). They also observed Appellant's vehicle nearly crossing the center dividing line as it passed the vehicle in front of them (*id.*). As Appellant approached and passed their vehicle, Deputy Sepeda likewise had to swerve to the right to avoid a collision (1 R.R. at 9-10, 28). Deputy Sepeda saw the tire of

1

Appellant's vehicle cross over the center yellow line as the two cars passed each other (1 R.R. at 9-10, 15, 18). This was not captured on video because the camera is mounted forward-facing on the dashboard of the patrol car and did not have a view of Appellant's vehicle as it passed the deputies' vehicle (1 R.R. at 15, 18). Neither deputy saw any obstruction in the roadway (1 R.R. at 10, 27).

Deputy Sepeda performed a U-turn, caught up to Appellant's vehicle and followed him to observe his driving (1 R.R. at 14, 19). Both Deputy Sepeda and Corporal Lehr testified that they wanted to be sure something was wrong before pulling Appellant over (1 R.R. at 20, 29). While following Appellant, both deputies observed him weave within his lane and have inconsistent speed (1 R.R. at 15, 21, 28). Specifically, Deputy Sepeda testified that Appellant was driving about ten miles per hour under the speed limit with fluctuating speed, drifting back and forth within his lane, and riding on the center line (1 R.R. at 15, 21-22). Corporal Lehr likewise testified that Appellant was unsteady in his lane, going towards both the left and right sides several times, and that – unlike most vehicles – he did not maintain a constant speed (1 R.R. at 28). Shortly after midnight, Appellant was pulled over for failing to maintain a single lane and suspicion of driving while intoxicated (1 R.R. at 8-9, 22, 29).

<u>Summary of the Argument</u>

There is support in the record for the trial court's determination that Lehr and Sepeda had reasonable suspicion for the traffic stop of Appellant's vehicle. The totality of the circumstances and reasonable inferences drawn from those circumstances provided ample grounds to meet the relatively low burden of objective, reasonable suspicion. Not only did Appellant commit a traffic offense in view of the deputies by crossing the center dividing line of the roadway, but his driving behavior was such that the deputies developed reasonable suspicion that Appellant was driving while intoxicated.

The Appellant's piecemeal approach to the facts of the case is erroneous; Texas precedents dictate that considering the totality of the circumstances is the proper approach when evaluating whether or not reasonable suspicion exists and further hold that acts which are not inherently criminal can still create reasonable suspicion that criminal activity is afoot.

The trial court's ruling recognized that the State more than met its burden at the hearing on Appellant's Motion to Suppress. Further, the trial court's findings parallel the evidence preserved in the record and fall exactly in line with the body of law regarding reasonable suspicion. Because the record and the law support the denial of the motion to suppress, the Court should uphold the trial court's ruling.

<u>Argument</u>

## I.
## Standard of Review

Courts will uphold a trial court's denial of a motion to suppress absent a clear abuse of discretion. *Fox v. State*, 900 S.W.2d 345, 346-47 (Tex. App.—Fort Worth 1995), *pet. dism'd, improvidently granted*, 930 S.W.2d 607 (Tex. Crim. App. 1996). When reviewing a trial court's ruling on reasonable suspicion in a motion to suppress, appellate courts apply the standard set out in *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). As noted in *State v. Ross*:

> [1] the appellate courts… should afford almost total deference to a trial court's determination of the historical facts that the record supports *especially when the trial court's fact findings are based on an evaluation of credibility and demeanor*. [2] The appellate court should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. [3] The appellate courts may review de novo "mixed questions of law and fact" not falling within this category.

32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (emphasis added). Further, even upon a *de novo* review, the trial court's ruling must be sustained if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 855-56.

## II.
### Officers had reasonable suspicion to conduct a traffic stop of Appellant for failing to maintain his vehicle on the right-hand side of the roadway in violation of Texas Transportation Code § 545.051.

In order to lawfully conduct a traffic stop, a peace officer must have reasonable suspicion, given the totality of the circumstances, that the driver is engaged in criminal activity. *Dowler v. State*, 44 S.W.3d 666, 669 (Tex. App.—Austin 2001, pet. ref'd). Reasonable suspicion is "specific articulable facts which, taken together with rational inferences from those facts, lead [to a conclusion] that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* It is more than a hunch, but only requires a minimal level of objective justification. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010). Further, an officer may stop a driver if he has reasonable suspicion that a traffic violation… has been committed." *Doyle v. State*, 265 S.W.3d 28, 31 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Appellant erroneously contends that he did not commit a traffic violation because he did not violate Section 545.060. Appellant's Brief at 10; Tex. Transp. Code Ann. § 545.060 (West, Westlaw through 2013 Sess.). However, it is clear from the testimony of the deputies and the findings of the trial court that Appellant did commit a traffic offense by violating Section 545.051 (1 R.R. *passim*). Tex. Transp. Code Ann. § 545.051 (West, Westlaw through 2013 Sess.). Pursuant to Section 545.051, "[t]raveling across the yellow line into oncoming traffic is a

traffic violation in itself and does not require the additional element of an unsafe maneuver by the driver as does… § 545.060." *Griffin v. State*, 54 S.W.3d 820, 823 (Tex. App.—Texarkana 2001, pet. ref'd). [1] The Texas courts have consistently held that crossing over a center yellow line is a distinct and separate traffic offense from weaving across white lines. *See Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.); *Doyle*, 265 S.W.3d at 32; *Griffin*, 54 S.W.3d at 823; *Johnson v. State*, 365 S.W.3d 484, 489 (Tex. App.—Tyler 2012, no pet.).

In this case, Deputy Sepeda's undisputed testimony is that he observed Appellant's tires cross over the yellow line, and the trial court found that his testimony was credible (1 R.R. at 9-10, 15, 18; Suppl. C.R. at 4). Corporal Lehr did testify that he did not see Appellant's vehicle come completely over the line, but he also said that he saw Appellant's vehicle coming toward their lane and that they had to make an evasive maneuver to avoid a collision (1 R.R. at 27-28). Corporal Lehr was in the passenger seat, and as such, was not as close and did not have Deputy Sepeda's view of Appellant's vehicle (*see* 1 R.R. at 8, 28). Notably, even if the testimony of Deputies Sepeda and Lehr had been completely contradictory, as

---

[1] Section 545.051 states:
  (a) An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:
     (1) the operator is passing another vehicle;
     (2) an obstruction necessitates moving the vehicle left of the center of the roadway….

the finder of fact, the trial court was entitled to accept some testimony and reject other testimony, in whole or in part. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *abrogated on other grounds by Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009). Further, both deputies observed the vehicle in front of them swerve away from Appellant's vehicle as it passed, and neither deputy observed any sort of obstruction in the roadway (1 R.R. at 10, 27).

Appellant mistakenly assumes that the language "failure to maintain a single lane" can only apply to Section 545.060, titled "Driving on Roadway Laned For Traffic". However, that language equally applies to Section 545.051, titled "Driving on Right Side of Roadway." While neither title includes the language used by the deputies and the trial court, it is obvious from the record and the trial court's findings that both parties were contemplating the lane violation contained in Section 545.051. Any further discussion of Section 545.060 is misleading and an affront to judicial economy.

The deputies developed reasonable suspicion that Appellant had committed a traffic violation when they observed the car in front of them swerve to avoid Appellant's oncoming vehicle, when the deputies also had to swerve to avoid a collision, and when Deputy Sepeda observed Appellant's tire cross the yellow line in violation of Section 545.051. *See Chang*, 994 S.W.2d at 877, 877 n.4 (noting that appellant's driving over the yellow line was sufficient to support a stop for a

7

traffic violation, and made any discussion of reasonable suspicion to stop for DWI unnecessary). Therefore, giving almost total deference to the trial court's determination of the facts and the credibility of witnesses, the record clearly supports the trial court's conclusion that Deputies Sepeda and Lehr had reasonable suspicion to stop Appellant for a traffic violation.

**III.**
**Officers had reasonable suspicion to conduct a traffic stop of Appellant for driving while intoxicated in violation of Texas Penal Code Section 49.04.**

Reasonable suspicion that a motorist is driving while intoxicated is determined by a totality of the circumstances analysis specific to each case, and individual factors are not to be considered piecemeal; courts should not isolate individual facts and decide whether each one *independently* gives rise to reasonable suspicion. *Tanner v. State*, 228 S.W.3d 852, 857-59 (Tex. App.—Austin 2007, no pet.); *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Furthermore, lawful conduct can form the basis for reasonable suspicion and the "as consistent with innocent activity as with criminal activity" analysis has been expressly rejected by the Court of Criminal Appeals. *Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997).

In considering the totality of the circumstances, reasonable suspicion must be based upon commonsense judgments and inferences about human behavior, taking into consideration the training and experience of the peace officers

involved. *Tanner*, 228 S.W.3d at 855; *see Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007). Facts available to an officer plus reasonable inferences from those facts in relation to a particular place may arouse justifiable suspicion. *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986) *overruled on other grounds by McKenna v. State*, 780 S.W.2d 797 (Tex. Crim. App. 1989). Courts require only a "minimal level of objective justification" on the part of the officer. *Tanner*, 228 S.W.3d at 855 (citing *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989). An officer's determination of the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Id.* at 856 (citing *Arvizu*, 534 U.S. at 274).

The Texas courts have developed a large body of case law regarding swerving on a roadway and the part it plays in developing reasonable suspicion of driving while intoxicated. The majority agree that weaving paired with another bad driving behavior will usually amount to reasonable suspicion. *Hernandez v. State*, 983 S.W.2d 867, 870 (Tex. App.—Austin 1998, pet. ref'd) (citing, *e.g.*, *Fox*, 900 S.W.2d 345). However, while many cases have found reasonable suspicion only where weaving is combined with other driving behaviors, this is not always required. *See Curtis*, 238 S.W.3d at 377. The officer's training, experience, and inferences drawn from observations of weaving can also give rise to reasonable suspicion without any additional driving behavior. *Id.* at 381.

9

Appellant relies heavily on *Hernandez* to support his position, but this reliance is misplaced. *See* 983 S.W.2d at 867; Appellant's Brief at 15. In *Hernandez,* the appellant's vehicle crossed one white line one time before being pulled over by the officer. *Id.* at 868. The officer did not observe anything else that would lead him to believe the driver was intoxicated and did not provide any objective circumstances from which he could infer intoxication. *Id.* However, the deputies in the instant case did provide an objective framework within which to evaluate Appellant's driving behavior: it was after midnight on Memorial Day on a road leading from Canyon Lake (1 R.R. at 8-9). Further, by the time the deputies observed Appellant weaving, they had already seen him drive over the center yellow line into oncoming traffic (1 R.R. at 10, 15, 18).

*Dowler* is more applicable to Appellant's case than *Hernandez*. In *Dowler*, the officer observed a vehicle drift back and forth within its lane, travel twenty miles per hour under the posted speed limit, and touch the outside white line more than once. 44 S.W.3d at 668-69. The *Dowler* Court reiterated the point that although there was nothing inherently criminal in weaving within a lane or driving under the speed limit, these factors could still give rise to reasonable suspicion of driving while intoxicated under a totality of the circumstances analysis. *Id.* at 670. The facts in *Dowler* fairly mirror those in the instant case, where Appellant was

10

observed to weave within his lane, ride the center line, and have inconsistent speed (1 R.R. at 15, 21-22, 28). *See* 44 S.W.3d at 668-69.

Likewise, in *Fox v. State*, the Fort Worth Court of Appeals found reasonable suspicion in circumstances which parallel those in Appellant's case. 900 S.W.2d at 346. In *Fox*, the appellant's vehicle passed the officer *without* crossing the yellow line or causing the officer to swerve. *See id.* at 345. The officer did not recognize the vehicle and ran its plates. *Id.* As she waited for the results, the officer followed the vehicle for about four miles. *Id.* The officer observed that the vehicle would weave back and forth within its lane and fluctuate in speed within the range of 55-40 mph. *Id.* The officer then initiated a traffic stop. *Id.*

The appellant in *Fox* argued there was no reasonable suspicion to stop him. *Id.* at 347. The court of appeals, noting the officer's testimony that the appellant's speed was fluctuating and that he was weaving back and forth within his lane, held that:

> [t]his testimony alone provided sufficient specific facts to support the trial court's finding that [the appellant's] temporary detention was lawful. Although none of the acts in which [the appellant] engaged prior to the initiation of the stop were inherently illegal, each was sufficient to create a reasonable suspicion that some activity out of the ordinary was or had occurred.

*Id.* The court affirmed the trial court's denial of the motion to suppress.

In the instant case, the deputies had even more facts and circumstances giving rise to a reasonable suspicion than were present in *Fox*. Appellant was

traveling away from Canyon Lake after midnight on Memorial Day (1 R.R. at 8-9). As Appellant approached the deputies, they observed that the car in front of them had to swerve to the shoulder to avoid Appellant's vehicle (1 R.R. at 10, 27). The deputies likewise had to swerve to avoid Appellant's vehicle, and Deputy Sepeda observed Appellant's tire cross the yellow line (1 R.R. at 9-10, 15, 18, 28). Aside from the late hour, *none* of the foregoing factors were present in *Fox*, where the officer merely noted that she did not recognize that appellant's car prior to following it. 900 S.W.2d at 345.

In addition to the foregoing events, the deputies further observed – as in *Fox* – that Appellant would weave back and forth within his lane and fluctuate in speed (1 R.R. at 15, 21, 28). Appellant apparently argues that because the deputies failed to use radar to get the exact speed of his vehicle, no evidence of fluctuation exists. *See* Appellant's Brief at 17. However, both deputies testified to the inconsistent speed and the trial court found that testimony credible (1 R.R. at 15, 28; supp. C.R. at 4). Further, State's Exhibit 1 shows the deputies' speed fluctuated from 40-55 mph as they followed Appellant (s*ee* State's Exhibit 1 at 00:34:00-37:45). Appellant argues that the fluctuation in his speed should not be considered because it was not as great as that in *Fox*, but it is *exactly the same* as the fluctuation observed in *Fox*. *See id.*; 900 S.W.2d at 347; Appellant's Brief at 17. In any event, this piecemeal comparison is exactly what the Court of Criminal Appeals rejected

in *Tanner*. 228 S.W.3d at 857-858 (following *Ornelas v. United States*, 517 U.S. 690 (1996) and *Arvizu*, 534 U.S. 266). Finally, Appellant argues that *Fox* is distinguished from the instant case because of the type of road involved. *See Fox*, 900 S.W.2d at 347; Appellant's Brief at 18. Appellant offers no support for his suggestion that the type of road figures in to the analysis, and his characterization of FM 306 as a "rural, curvy farm to market road" is not supported by the record (1 R.R. at 16-17; *see also* State's Exhibit 1 at 00:32:50-33:07, 00:34:00-37:45).

Another consideration in the totality of the circumstances analysis – which Appellant ignores altogether – is the training and experience of the deputies. *See Curtis*, 238 S.W.3d at 381. Although Deputy Sepeda was fairly new to the patrol aspect of law enforcement, Corporal Lehr had considerably more experience (1 R.R. at 7, 24-25). At the time of this incident, Corporal Lehr had been a peace officer for over sixteen years, was in a leadership position with the Comal County Sheriff's Office, and was a Field Training Officer (*Id.* at 24-25). Notably, the officer in *Fox* gave no testimony whatsoever regarding her experience in the field. 900 S.W.2d 345, 348 (Livingston, J., dissenting). From his training and experience, Corporal Lehr was able to recognize that something was wrong with Appellant, and he suspected that it was intoxication (1 R.R. at 28-29). Deputy Sepeda was also able to make this inference based on his training even though he had not actually conducted a DWI stop prior to that night (*Id.* at 20).

13

The deputies had reasonable suspicion Appellant might be driving while intoxicated after more than one car had to swerve to avoid Appellant, his tire crossed the center lane, and he subsequently swerved within his lane and failed to control his speed as Appellant drove away from Canyon Lake near midnight on Memorial Day. Despite Appellant's futile attempts to distinguish *Fox,* it is apparent that the cumulative facts, surrounding circumstances, and reasonable inferences in this case meet or exceed those which *Fox* and other Texas cases have found sufficient to meet the minimal level of objective justification required to conduct a traffic stop.

In giving almost total deference to the trial court's determination of the facts and the credibility of witnesses, it is clear that the record supports the trial court's conclusion that Deputies Sepeda and Lehr had sufficient information to give rise to reasonable suspicion that Appellant was operating a motor vehicle while intoxicated. *See Tanner*, 228 S.W.3d at 857 (citing *Ornelas*, 517 U.S. at 699). Because it is reasonably supported by the record, the Court of Appeals should affirm the trial court's denial of Appellant's Motion to Suppress.

Prayer

Wherefore, premises considered, Appellee prays that this Honorable Court of Appeals affirm in all matters the judgment of the trial court in this case.

Jennifer Tharp
Criminal District Attorney

By

/s/ Abigail L. Whitaker
**Abigail L. Whitaker**
SBN: 24051915
Misdemeanor Prosecutor
150 N. Seguin Ave., Ste. 307
New Braunfels, TX 78130
(830) 221-1300
Fax (830) 608-2008
E-mail: whitaa@co.comal.tx.us
Attorney for the State

## Certificate of Service

I, Abigail L. Whitaker, attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this Brief for the State has been delivered to Appellant MICHAEL MARRERO's attorney of record in this matter:

The Law Offices of Jamie Balagia
Hallye C. Braud
313 South Main
San Antonio, Texas 78204
Telephone: (210) 394-3833
Facsimile: (210) 271-3833
Email: hallye@dwidude.com

By electronically sending it to the above email address through efile.txcourts.gov e-filing service, this 27th day of February, 2015.

/s/ Abigail L. Whitaker
**Abigail L. Whitaker**

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are ***3,411*** words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Abigail L. Whitaker
Abigail L. Whitaker