Kevin Patrick DOYLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–01103–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 6, 2008.

Discretionary Review Refused Oct. 1, 2008.

Rehearing Overruled April 23, 2008.

Hugh J. Plummer, Plummer & Farmer, Houston, TX, for Kevin Patrick Doyle.

Eric Kugler, Assistant District Attorney–Harris County, William J. Delmore, III, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for appellee.

Panel consists of Justices NUCHIA, HANKS and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

A jury found appellant, Kevin Patrick Doyle, guilty of the offense of driving while intoxicated ("DWI"). *See* TEX. PENAL CODE ANN. §§ 49.01, 49.04 (Vernon 2003). The trial court assessed punishment at 120 days in jail, suspended the sentence and placed appellant on community supervision for 18 months, and assessed an $800 fine. On appeal, appellant challenges the trial court's denial of his motion to suppress and denial of his request for a jury instruction in accordance with Code of Criminal Procedure article 38.23(a).

We affirm.

## Background

Just after midnight on June 8, 2006, Officer Margarito Perales watched appellant weave from his lane to the opposing lane and back while driving on Taft Street in the Montrose area of Houston. Perales testified that traffic was heavy and that he had to stop his patrol car to avoid a head-on collision with appellant.

Perales testified that when he stopped appellant, he noticed that appellant had glassy, red, bloodshot eyes, had slurred speech, and smelled like alcohol. Appellant, who was a wine distributor, told Perales that he had two glasses of wine that night at a friend's house. Perales asked appellant to step out of his vehicle and to perform field sobriety tests, and appellant agreed. Perales administered the one-leg stand, the horizontal-gaze-nystagmus, the walk-and-turn, and the Rhomberg tests. Perales observed six of six clues for intoxication in appellant using the horizontal-gaze-nystagmus test, three of four clues for intoxication using the one-leg stand test, including loss of balance and swaying, and six of eight clues using the walk-and-turn test, including, again, swaying and loss of balance. In addition, Perales administered the Rhomberg test, during which appellant was asked to estimate when thirty seconds had elapsed. Appellant missed the mark by ten seconds, estimating thirty seconds had elapsed when, in fact, forty seconds had elapsed. Based on these field-sobriety tests, Perales concluded that appellant was intoxicated.

Perales arrested appellant and took him to the police station, where appellant repeated, and failed, several field-sobriety tests and registered 0.19 breath alcohol content after agreeing to take the Intoxilyzer test.

Appellant testified at trial, saying that: he was not intoxicated that night, only nervous and tired; he had drank only two glasses of wine that night and two tasting-samples earlier in the evening; and he did weave, but only to avoid parked cars on the narrow street. He said he did not come close to hitting Perales's patrol car, and he noted that there are no lane markings on that part of Taft Street, saying, "It's hard to say whose lane you're in." On cross-examination, Officer Perales also said that there was no dividing line in the street.

On the day of trial, appellant filed a motion to suppress, alleging that Officer Perales lacked reasonable suspicion to stop him. After Perales testified, the trial court denied the motion to suppress. In addition, appellant objected to the charge and requested an instruction about the alleged factual dispute regarding Perales's stop of appellant. Finding no factual dispute, because appellant's testimony failed to controvert Perales's testimony regarding appellant's weaving, the trial court refused to include the requested instruction.

Appellant challenges the trial court's denial of his motion to suppress and of his requested jury instruction.

## Motion to Suppress

■■■ A trial court's ruling on a motion to suppress evidence will not be set aside unless there has been an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Magana v. State*, 177 S.W.3d 670, 672 (Tex.App.-Houston [1st Dist.] 1997, no pet.). We review the trial court's ruling under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim. App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim.App.2002). We review de novo those "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. *Id.*; *see Guzman*, 955 S.W.2d at 89. We view the record and all reasonable inferences therefrom in the light most favorable to the ruling on the suppression motion and sustain the ruling if it is rea-

sonably supported by the record and is correct under any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138.

■■■ Because it is undisputed that appellant was stopped without a warrant, the State bears the burden to prove the reasonableness of the warrantless detention. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App.2005). The State argues that the stop was justified because Officer Perales testified that he witnessed appellant commit a traffic violation.

## Reasonable Suspicion

■■■ An officer conducts a lawful stop when he has reasonable suspicion to believe that an individual is violating the law. *Id.* A temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.*; *Brother v. State*, 166 S.W.3d 255, 257 (Tex.Crim.App. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). We disregard any subjective intent of the officer making the stop and look solely to whether an objective basis for the stop exists. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001). The determination of the presence of reasonable suspicion is a factual one and is made and reviewed by considering the totality of the circumstances at the time of the stop. *Icke v. State*, 36 S.W.3d 913, 915 (Tex.App.-Houston [1st Dist.] 2001, pet ref'd).

■■■ An officer may stop a driver if he has reasonable suspicion that a traffic violation was in progress or had been committed. *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex.App.-Fort Worth 2001, pet. ref'd); *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex.App.-Dallas 2001, no pet.); *Valencia v. State*, 820 S.W.2d

397, 400 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd).

In his first issue, appellant contends that the trial court erred by denying his motion to suppress. Officer Perales testified that he stopped appellant because he weaved into the opposing lane of traffic. Specifically, he said, "The vehicle in front of me was weaving into my lane and then weaved back into his lane. So, at that time I had to stop from were I was at so we wouldn't run into each other. At that time I made a U-turn and conducted a traffic stop for that reason."

The trial court found that "when the weave took place, the officer [was] a few car lengths away and he [was] compelled to stop his car for ... his own safety reason." The trial court concluded that Officer Perales had a reasonable suspicion that appellant committed a traffic violation, namely a violation of Transportation Code section 545.060. TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999). Transportation Code section 545.060 provides:

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> > (1) shall drive as nearly as practical entirely within a single lane; and
> >
> > (2) may not move from the lane unless that movement can be made safely.

*Id.*

Officer Perales testified that Taft Street did not have clearly marked lanes, so we disagree with the trial court that Perales had witnessed that specific traffic violation. However, on appeal the State argued that section 545.051 of the Transportation Code justified the traffic stop. *Id.* § 545.051(a) (Vernon 1999). Section 545.051 provides that a driver on a "roadway of sufficient width shall drive on the right half of the roadway" unless passing another vehicle or avoiding an obstruction. *Id.* Section 545.051 further requires a driver avoiding an obstruction to yield the right of way to a vehicle that is moving in the proper direction on the unobstructed portion of the roadway and that is an immediate hazard. *Id.*

As a factual matter, the trial court found that Perales watched appellant weave into the opposing lane of traffic. Perales testified that he was moving in the opposite direction of the road from appellant and that he had to stop his patrol car to avoid a head-on collision. Applying the law to these facts, we conclude that Perales had reasonable suspicion that appellant had violated section 545.051. We hold that the trial court did not abuse its discretion in denying appellant's motion to suppress.

We overrule appellant's first issue.

### Jury Charge

In his second issue, appellant contends that he was entitled to an article 38.23 jury instruction regarding whether or not appellant failed to maintain a single lane while driving or weaved into the oncoming lane. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).

In determining whether there is reversible error due to an erroneous jury charge, we first decide whether error exists, and if error exists, then we determine whether appellant was harmed. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App.2003). Because appellant timely objected to the charge, charge error is preserved, and we will reverse only if we find some actual harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994) ("Where there has been a timely objection made at trial, an appellate court will search only for 'some harm.' ")

The exclusionary rule of article 38.23 proscribes admissibility of evidence

against an accused in a criminal trial if the evidence was "obtained by an officer or other person in violation of the laws or constitutions of Texas or the United States." TEX.CODE CRIM. PROC. ANN. art. 38.23(a). "When an issue of fact concerning the validity of a vehicle stop is raised by the evidence, the defendant has a statutory right to have the jury charged concerning the issue." *Beasley v. State*, 810 S.W.2d 838, 842 (Tex.App.-Fort Worth 1991, pet. ref'd) (citing *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App.1986)); *see* TEX.CODE CRIM. PROC. ANN. art 38.23(a).

However, the trial court properly refuses such an instruction if the facts concerning how the evidence was obtained are not in dispute. *Poulos v. State*, 799 S.W.2d 769, 772 (Tex.App.-Houston [1st Dist.] 1990, no pet.). If the defendant and the State's witnesses testify to the same facts, the defendant has no right to such a charge. *Beasley*, 810 S.W.2d at 842; *see Marrs v. State*, 647 S.W.2d 286, 289 (Tex. Crim.App.1983) (trial court properly denied article 38.23 jury instruction where no factual issues were in dispute regarding defendant's arrest).

In *Beasley*, for example, the arresting officers and the appellant testified that she was swerving and weaving between lanes on the highway. *Beasley*, 810 S.W.2d at 840. Beasley testified that she was swerving but offered an explanation that she swerved because she was trying to stop her children, who were in the car, from fighting. *Id.* The court of appeals held that "there was no factual controversy as to whether or not appellant was swerving and appellant was not entitled to the [article 38.23] instruction she requested." *Id.* at 842.

In *Bell v. State*, the defendant was stopped after an officer watched her car weave in and out of its lane of traffic while following closely behind a U–Haul truck.

*Bell v. State*, No. 2–04–287–CR, 2005 WL 503647, at *1, (Tex.App.-Fort Worth March 3, 2005, pet. ref'd) (mem. op., not designated for publication). The court of appeals upheld the trial court's denial of her request for an article 38.23 instruction, noting that she did not contest the existence or nature of the evidence underlying the officer's decision to stop her, she merely challenged whether the circumstances he observed authorized the stop. *Id.* at *2. Because only the effect of the underlying facts was disputed, the court of appeals held that the defendant was not entitled to an article 38.23 jury instruction. *Id.*

Similarly, in *Sledge v. State*, a police officer stopped the defendant's car after watching him change lanes without signaling and then weave from lane to lane. *Sledge v. State*, No. 05–93–00667–CR, 1994 WL 247961, at *1 (Tex.App.-Dallas June 9, 1994, no pet.) (not designated for publication). The defendant testified that he did change lanes but only because the lane ended, "played out." *Id.* at *2. The court of appeals held that the defendant was not entitled to an article 38.23 instruction because he did not dispute the officer's testimony about his weaving but, instead, sought to explain the reason why he drove that way. *Id.* The court of appeals concluded that the evidence did not raise a fact issue about whether the officer stopped the defendant illegally. *Id.*

At the charge conference in this case, appellant objected to the lack of an instruction regarding the stop of appellant's car, specifically whether or not he was weaving or failed to maintain a single lane. Both Perales and appellant testified that appellant weaved into the lane of oncoming traffic. While appellant explained that he did so to avoid a parked car, he did not dispute the reason why Perales stopped him, *i.e.*, because he was weaving. Because there was no factual issue in dispute

regarding Officer Perales's stop of appellant, we hold that the trial court did not err in refusing appellant's requested jury instruction.

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.