

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00216-CR

_____


THE STATE OF TEXAS, Appellant

V.

THOMAS JACOB EVANS, Appellee


On Appeal from the County Court at Law #1
Gregg County, Texas
Trial Court No. 2009-1097


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In early March 2009, around 2:00 a.m.—when the bars were closing for the night—Gladewater Police Officer Stephen Washburn observed an automobile driven by Thomas Jacob Evans travel for an eighth to a quarter of a mile to the left of center of Armstrong Road, a Gladewater street that had no center striping but was wide enough for two lanes of traffic. Washburn concluded that Evans had committed a traffic violation sufficient to authorize Washburn to stop Evan's vehicle. When Washburn stopped Evans, he discovered evidence that confirmed Washburn's earlier suspicion that Evans had been driving under the influence of alcohol.

Evans, charged with driving while intoxicated (DWI),[1] having one prior DWI conviction on his record, sought to suppress the evidence[2] from the traffic stop. After a pretrial hearing,[3] the trial court suppressed the evidence. The State appeals. Because Evans committed a traffic offense in Washburn's view, we reverse the suppression order and remand this case for further

---

[1]"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). "'Intoxicated' means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance in the body." TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003).

[2]Evans sought to suppress evidence of his arrest and the fruit of that arrest, alleging a warrantless arrest made without reasonable suspicion or probable cause to believe Evans was engaged in criminal activity. Evidence sought to be suppressed included written and oral statements made by Evans to officers at or after his arrest, testimony of officers regarding Evans' statements or officers' observations or identification of Evans, any evidence obtained as a result of Evans' arrest, and photographs or video recordings taken by officers at Evans' arrest.

[3]At the suppression hearing, the State called Washburn to the witness stand and played for the court a portion of a video recording shot by a camera mounted in Washburn's patrol car.

proceedings.

A few minutes before stopping Evans, Washburn had been helping with an unrelated traffic stop, when he had noticed the Evans vehicle pass his vehicle on the right through the parking area of a nearby car lot. That had sparked Washburn's interest, and he began following Evans. After traveling a short distance, Evans turned right on Shell Camp Road and then onto Armstrong Road, a blacktop road with no center striping, but of sufficient width for two traffic lanes. Evans did not commit any traffic violations before turning onto Armstrong Road.

After Evans turned onto Armstrong Road, he began driving left of center and failed to maintain his lane of travel for an eighth to a quarter of a mile. Even without the lane markings, it was obvious Evans was driving in the middle of the road, prompting Washburn to activate his emergency lights. When Evans failed to respond, Washburn hit his air horn and siren. In response, at least initially, Evans failed to respond. Evans finally stopped in response to Washburn's continued activation of his car's siren. There was no other traffic in the area at 2:00 a.m.

Washburn testified that the local bars usually close at 2:00 a.m., about the time he noticed Evans drive through the car lot. Based on the fact that Evans was driving down the middle of the road at 2:00 a.m., Washburn believed Evans to possibly be intoxicated.

3

The trial court made specific findings of fact and conclusions of law[4] and suppressed the evidence.

---

[4]The trial court made the following findings of fact:

1.      On March 3, 2009, Officer Stephen Washburn of the Gladewater Police Department was assisting in a traffic stop and first noticed defendant's vehicle as it passed by him on the right in a used vehicle parking lot at approximately 2:00 a.m.

2.      Officer Washburn then followed defendant's vehicle west on Highway 80 for a short period of time observing defendant turn right onto Shell Camp Road and then turn right onto Armstrong Road.

3.      Armstrong Road is an undivided, two-lane blacktop road and was not marked with a center lane.  There is no shoulder, fog line or curbing.  Armstrong Road is a public street.

4.      Officer Washburn observed no traffic violations by the defendant on the parking lot, Highway 80, or Shell Camp Road.  Officer Washburn initiated a traffic stop after observing defendant's vehicle driving left of the center of Armstrong Road for a distance of approximately an eighth to a quarter of one mile.  Officer Washburn did not observe any weaving by the defendant.

5.      There was no other traffic on the blacktop road, and the defendant did not appear to be driving in an unsafe manner.

6.      Officer Washburn's testimony was credible.

7.      The incident was captured on video, reviewed by this Court and admitted into evidence.

The trial court made the following conclusions of law:

1.      The Court finds that Officer Washburn did not have reasonable suspicion to stop defendant for a violation of traffic code or for suspicion of driving while intoxicated under the totality of the circumstances.

2.      The Court finds that the defendant did drive his vehicle to the left of center of the roadway; however, the Court does not find that to be unsafe on the blacktop road that is not marked with center markings and void of any traffic other than the defendant and the officer traveling in the same direction.

3.      Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.  Any conclusion of law that is a finding of fact shall be deemed a finding of fact.

On appeal, the State claims (1) Washburn had probable cause to stop Evans based on a traffic violation, and (2) Washburn had a reasonable suspicion Evans was driving while intoxicated. Because the traffic stop was authorized due to a traffic violation by Evans, we reverse the suppression order. Because that disposes of this appeal, we do not reach the State's second claim.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford almost total deference to the trial court's determination of the historical facts supported by the record, especially when the trial court's fact-findings are based on an evaluation of the credibility and demeanor of the witnesses. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman*, 955 S.W.2d at 89–90. When the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply a de novo standard of review. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). That is, we give almost total deference to the trial court in determining what the actual facts are, but we review de novo the application of the law to those facts. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Because the historical facts in the present case are not in dispute, we make a de novo determination of whether those facts give rise to a reasonable suspicion of criminal activity. *Guzman*, 955 S.W.2d at 87.

*The Traffic Stop Was Authorized Due to a Traffic Violation by Evans*

The State asserts Washburn had probable cause to make the traffic stop. Detention, as opposed to an arrest, may be justified on less than probable cause. *Carmouche*, 10 S.W.3d at 328. A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention and, therefore, must be justified by reasonable suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). An officer conducts a lawful temporary detention when in possession of reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Thus, if Washburn had a reasonable suspicion that a traffic violation was in progress or had been committed, the detention was lawful. *See Doyle v. State*, 265 S.W.3d 28, 31 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead to a conclusion that a particular person is, has been, or soon will be engaged in criminal activity. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Doyle*, 265 S.W.3d at 31 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The determination of reasonable suspicion is factual, and must be examined in terms of the totality of the circumstances at the time of the stop. *Curtis v. State*, 238 S.W.3d 376, 380 (Tex. Crim. App. 2007); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). It is the State's burden to prove the warrantless detention was lawful. *State v. Huddleston*, 164 S.W.3d 711, 716 (Tex.

6

App.—Austin 2005, no pet.).

The State's contention, urged at the suppression hearing and on appeal, is that Evans violated Section 545.051 of the Texas Transportation Code. This section of the Code provides that an operator on a roadway of sufficient width shall drive on the right half of the roadway unless the operator is passing another vehicle, an obstruction requires moving the vehicle to the left of the center of the roadway, the operator is on a roadway divided into three marked lanes for traffic, or the operator is on a roadway restricted to one-way traffic. TEX. TRANSP. CODE ANN. § 545.051(a) (Vernon 1999).

Evans contends that, because there is no evidence that he was speeding or driving erratically, there was no traffic violation. Although the trial court found that Evans was driving to the left of center on Armstrong Road for an eighth to a quarter of a mile and that Armstrong Road was an undivided, two-lane road without a center stripe, it concluded that Evans' driving on Armstrong Road was not unsafe on an unmarked blacktop road traveled only by Evans and Washburn. The trial court, therefore, concluded that Washburn lacked reasonable suspicion to stop Evans for a traffic violation. We disagree.

The specific factual findings of the trial court indicate Evans was driving left of center of the roadway for an eighth to a quarter of a mile and that the road was an undivided, two-lane road without a center stripe. In other words, Evans failed to drive on the right half of the roadway as

7

required by Section 545.051(a) of the Texas Transportation Code. *See id*. This observation alone was enough to create a reasonable suspicion that a traffic violation was in progress. *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (officer's observation of defendant's vehicle crossing center line one time provided reasonable suspicion for traffic stop). The fact that Armstrong Road did not have a center stripe is of no consequence in making this determination. Section 545.051 of the Texas Transportation Code does not limit the requirement of driving in the right lane to only roadways marked with a center stripe. TEX. TRANSP. CODE ANN. § 545.051(a).

The trial court concluded that, even though Evans drove his vehicle to the left of the center of the roadway, to do so was not unsafe in this circumstance. But Section 545.051 does not allow for a driver to move from the right half of the roadway if that movement can be made safely. It merely requires that, if a roadway is of "sufficient width," a driver must remain on the right half of the roadway, unless one of the statutory exceptions applies. Washburn's testimony established that none of the exceptions to the requirement to drive on the right half of the roadway applied in this circumstance.[5] Accordingly, the determination of whether Evans could safely drive left of center is irrelevant to our reasonable-suspicion analysis. *See Bracken v. State*, 282 S.W.3d 94, 98–99 (Tex. App.—Fort Worth 2009, pet. ref'd) (because Section 545.051(a) has no "unless

---

[5]Evans was not driving in the middle of the road for the purpose of passing another vehicle or to avoid obstructions or hazards in the roadway. Armstrong Road was not divided into three marked lanes for traffic, and it was not a one-way street.

movement can be made safely" exception to prohibition against crossing center of road, issue of safety is irrelevant to analysis of reasonable suspicion).

For these reasons, we conclude that Washburn had a reasonable suspicion that a traffic violation was in progress by virtue of the fact that Evans failed to travel in the right half of the roadway for a distance of an eighth to a quarter of a mile.[6]

Having found that, based on the traffic violation, Washburn had specific articulable facts to justify the traffic stop, we conclude that the trial court erred in granting Evans' motion to suppress. Accordingly, we reverse the suppression order and remand this cause to the trial court for further proceedings.

Josh R. Morriss, III
Chief Justice

Date Submitted:     April 1, 2010
Date Decided:      April 2, 2010

Do Not Publish

---

[6]The State also contends that Washburn's authority to stop Evans was supplied by his reasonable suspicion to believe that Evans was driving while intoxicated.   Because our ruling as to the traffic offense is dispositive of this appeal, we do not reach that claim.

9