

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00422-CR

ROBERT BRETT DYER                                                       APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

-----------

### FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Robert Brett Dyer appeals his conviction for driving while intoxicated.  In a single point, Dyer argues that the trial court erred by not including an article 38.23(a) instruction in the jury charge because a disputed issue of fact existed.  *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).  We will reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On January 16, 2008, Fort Worth police officers Ryan Timmons and Carolyn Gilmore were patrolling Northeast 28th street in Fort Worth. At 1:24 a.m., the officers began following a gray Ford F-150 truck driven by Dyer and observed the truck swerve to the left and strike the median with the driver's side tires. The officers described the median as a six-to-eight-inch curb separating east-bound and west-bound traffic. The officers initiated a traffic stop, and at that point, they activated an on-dash video camera. After approaching Dyer's vehicle, Officer Timmons noticed a strong odor of alcohol emanating from it and that Dyer had very watery eyes and slurred speech. Officer Timmons asked Dyer to step out of the vehicle and to perform a variety of field sobriety tests, all of which Dyer failed. The officers arrested Dyer for driving while intoxicated.

At Dyer's trial, Officers Timmons and Gilmore both testified that they saw Dyer's vehicle hit the curb. The videotape of the stop was played for the jury and shows Dyer pointing to his vehicle several times while talking to the officers; the videotape did not have audio. Both officers were cross-examined about what Dyer was saying as he pointed to his tires; Officer Timmons recalled that he "guess[ed] [Dyer] didn't think he struck the median," and Officer Gilmore testified that she thought Dyer was trying to argue that there was no damage to his tires. Dyer's sole witness was his father, Dewayne Simpson Dyer. He testified about his son's various physical and mental ailments, including his hearing loss, resulting speech problems from his hearing loss, and an old injury to his knee.

2

The jury found Dyer guilty, and the trial court assessed his punishment at 180 days in jail, probated for twenty-four months, and a $750 fine.

### III.  ARTICLE 38.23(a) JURY INSTRUCTION

In his sole point, Dyer argues the trial court erred by not including an article 38.23(a) instruction in the jury charge because a fact issue existed regarding whether his vehicle struck the curb, which was the reason the officers stopped him.  Dyer acknowledges that he did not request an article 38.23(a) instruction, but he argues that the trial court's failure to sua sponte include such an instruction caused him to suffer egregious harm.

### A.  Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).  Initially, we must determine whether error occurred.  If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal.  *Abdnor*, 871 S.W.2d at 731–32.

If there is error in the court's charge but the appellant did not preserve it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922

S.W.2d 166, 171 (Tex. Crim. App. 1996). Egregious harm is the type and level of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen*, 253 S.W.3d at 264 & n.15; *Olivas v. State,* 202 S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); *Almanza,* 686 S.W.2d at 172.

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

## B. The Law Concerning an Article 38.23(a) Jury Instruction

Article 38.23(a) provides that no evidence obtained by an officer or other person in violation of the laws or constitutions of Texas or the United States shall be admitted in evidence against the accused on the trial of any criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a). It also provides that when the legal evidence raises such an issue, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained by such a violation, then it shall disregard any such evidence. *Id.*

4

A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). A defendant must meet three requirements before he is entitled to the submission of a jury instruction under article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510.

In order for there to be a conflict in the evidence that raises a disputed fact issue, there must be some affirmative evidence in the record that puts the existence of that fact in question. *Id.* at 513. If a defendant successfully raises a factual dispute over whether evidence was illegally obtained, inclusion of a properly worded article 38.23 instruction is mandatory. *Bell v. State*, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997).

### C. Disputed Issue of Material Fact

In this case, although Officers Timmons and Gilmore testified unequivocally that they witnessed Dyer swerve and strike the curb on the center median, their testimony, along with the videotape of the stop, demonstrates that Dyer disputed that he hit the curb. Dyer can be seen on the videotape pointing to his truck several times during the conversation with the officers, and after their discussion, Officer Gilmore approached Dyer's car and briefly shined her

5

flashlight on the driver's side tire. Officer Timmons explained Dyer's pointing on the video—"I guess he didn't think he struck the median, but, like I said, both of us were in the car and observed it right in front of us." During Officer Gilmore's cross-examination, the following exchange occurred:

> Q. All right. And in the video, did you see the - - I guess you haven't seen the video, but during the interaction with Mr. Dyer, did he ever point to his tires and try to get you to go over and look at his tires to show you that there was no damage whatsoever to his tires?

> A. I think he was trying to make that argument, yes.

The question we must answer is whether the videotape and the officers' testimony about the videotape created "some affirmative evidence of 'did not [hit the curb]' in the record" to create a disputed fact issue for the jury to resolve. *See Madden*, 242 S.W.3d at 514. The court of criminal appeals' opinion in *Reynolds v. State* is instructive. *See* 848 S.W.2d 148, 148–49 (Tex. Crim. App. 1993). In that case, the officer who stopped Reynolds for speeding testified that Reynolds "told [the officer] he did not think he was going 'that fast' and he was going to contest the speeding ticket." *Id.* at 148. Reynolds's brother, a passenger in the car, testified that he did not think Reynolds had been speeding and that Reynolds himself did not think he had been speeding. The court of criminal appeals held,

> While it is true that appellant's own perception of his speed is not dispositive, his perception does fairly raise an issue that he was not speeding in fact. If, in turn, the jurors believed that appellant was not in fact speeding, they would then be forced to conclude that the officer's testimony was either mistaken or incredible. And, although a conclusion that the officer was mistaken would not affect the

6

legitimacy of his stopping appellant, a conclusion that he was lying would. Consequently, appellant's perception of his own speed was relevant . . . because it did "have a[] tendency to make the existence of a[] fact that is of consequence to a determination of the action [i.e., whether the officer was telling the truth] more probable . . . than it would [have] be[en] without the evidence." Tex. R. Crim. Evid. 401.

*Id.* at 149. Thus, the court held that Reynolds was entitled to an article 38.23(a) instruction because there was conflicting evidence from which the jury could have concluded that the officer was lying, which would have affected the legitimacy of the officer's stop. *Id.*

Here, like in *Reynolds*, evidence was presented—through the officers's testimony and through the videotape of the stop—that Dyer disputed whether he had hit the curb. This evidence conflicted with the officers's testimony that they saw Dyer hit the curb, which was the sole reason that they stopped him.[2] Had

---

[2]The State argues that the officers stopped Dyer because they saw him commit two separate driving infractions—swerving within his lane (toward the left side of the lane) and striking the curb. Consequently, the State argues that because Dyer did not dispute both bases for the stop, he was not entitled to an article 38.23(a) jury instruction. *See, e.g.*, *Doyle v. State*, 265 S.W.3d 28, 33–34 (Tex. App.—Houston [1st Dist.] 2008, pet. filed) (holding defendant not entitled to instruction regarding whether or not he failed to maintain a single lane or weaved into the oncoming lane when he testified as to why he weaved but did not dispute that he did, in fact, weave); *Sledge v. State*, No. 05-93-00667-CR, 1994 WL 247961, at *2 (Tex. App.—Dallas June 9, 1994, no pet.) (not designated for publication) (holding defendant not entitled to article 38.23(a) instruction when he disputed officer's testimony that he was weaving but did not dispute officer's testimony that he changed lanes without signaling). However, both Officer Gilmore's and Officer Timmons's testimony establish that they stopped Dyer for a single driving infraction—striking the median. In fact, Officer Timmons explained that it was not possible for a truck the size of Dyer's truck to swerve to the left without hitting the curb. Thus, here, swerving left was not a separate basis for the stop, but it was part and parcel of Dyer's single action in moving to the left in

the jury believed the contrary evidence and believed that the officers were not credible, the stop would not have been justified. *See id.* Consequently, the trial court erred by not including an article 38.23(a) instruction in the jury charge. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a); *Reynolds*, 848 S.W.2d at 149; *see also Stone v. State*, 703 S.W.2d 652, 655 (Tex. Crim. App. 1986) (finding error when appellant and her witness testified that appellant was driving in a prudent manner and was not weaving on the roadway, contrary to officer's testimony), *overruled on other grounds by Atkinson v. State*, 923 S.W.2d 21, 25 (Tex. Crim. App. 1996).

### D. Egregious Harm

Having found error, we must conduct a harm analysis. Because Dyer never presented the trial court with a proposed jury instruction, we will review the error for egregious harm. *See Almanza*, 686 S.W.2d at 171.

### *1. The Entire Jury Charge*

We first review the degree of harm in light of the entire jury charge. *See id.* The charge contained general language regarding the presumption of innocence; the burden of proof; the defendant's right not to testify; and the jury's role as the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given the testimony. The charge instructed the jury to acquit Dyer if it had a reasonable doubt as to his guilt. However, the jury was not instructed to resolve

his lane and striking the curb; if Dyer did not strike the curb, he did not swerve left.

8

the disputed fact issue that either justified or invalidated the officers' stop of Dyer. If properly instructed, the jury would have been required to disregard the evidence obtained during the stop if it believed that the officers' testimony that they saw Dyer hit the curb was not credible. *See Hutch*, 922 S.W.2d at 172–23; *Reynolds*, 848 S.W.2d at 149; *see also Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968) (holding that an automobile stop is justified when an officer has reasonable suspicion to believe that a traffic violation has occurred); *Woods v. State,* 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (same).

### 2. The State of the Evidence

We next examine the harm in light of the state of the evidence, including the contested issues and weight of probative evidence. *See Almanza*, 686 S.W.2d at 171. The issue of whether Dyer's vehicle struck the curb was contested at trial, and as we explained above, the jury was allowed to consider evidence that the officers obtained as a result of the stop without first determining a fact issue related to the legitimacy of that stop. *See Hutch*, 922 S.W.2d at 172–73 ("Whether appellant was to be convicted depended upon whose testimony the jury found credible."); *see also Terry,* 392 U.S. at 21–22, 88 S. Ct. at 1880; *Woods,* 956 S.W.2d at 35.

### 3. The Arguments of Counsel

The bulk of the arguments were devoted to the issue of whether Dyer was intoxicated, not whether the stop was legal. The State's closing argument primarily addressed whether Dyer had lost the normal use of his mental or

9

physical faculties due to intoxication, rather than due to his various physical ailments. The State did point out that the reason for the initial stop was that Dyer had jumped the curb. Defense counsel did not expressly contest the legality of the stop in his closing arguments, but he did discuss the video in which Dyer can be seen pointing at his tires and criticized the officers for not inspecting the tires for damage. Defense counsel argued that it "all comes down to simply what you believe in terms of the testimony and the credibility of that testimony." But jury arguments are not evidence, the jury may not consider them as such, and they do not serve to instruct the jury on the law. *See Hutch*, 922 S.W.2d at 173.

### 4. Egregious Harm

Viewing the jury charge as a whole, considering the state of the evidence and the fact that the reasonable suspicion for the stop was based solely on a contested fact issue, and reviewing the arguments by counsel, we conclude that Dyer suffered egregious harm. Consequently, we sustain Dyer's sole point.

## IV. CONCLUSION

Having sustained Dyer's sole point, we reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 16, 2010