02-09-422-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00422-CR 

 

 


 
 
 Robert Brett Dyer
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM County
Criminal Court No. 7 OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant Robert Brett
Dyer appeals his conviction for driving while intoxicated.  In a single point, Dyer argues that the trial
court erred by not including an article 38.23(a) instruction in the jury charge
because a disputed issue of fact existed. 
See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). 
We will reverse and remand.

II. 
Factual and Procedural Background

On January 16, 2008, Fort Worth police officers Ryan
Timmons and Carolyn Gilmore were patrolling Northeast 28th street in Fort
Worth.  At 1:24 a.m., the officers began
following a gray Ford F-150 truck driven by Dyer and observed the truck swerve
to the left and strike the median with the driver’s side tires.  The officers described the median as a
six-to-eight-inch curb separating east-bound and west-bound traffic.  The officers initiated a traffic stop, and at
that point, they activated an on-dash video camera.  After approaching Dyer’s vehicle, Officer
Timmons noticed a strong odor of
alcohol emanating from it and that Dyer had very watery eyes and slurred
speech.  Officer Timmons asked Dyer to
step out of the vehicle and to perform a variety of field sobriety tests, all
of which Dyer failed.  The officers
arrested Dyer for driving while intoxicated.

At Dyer’s trial, Officers Timmons and Gilmore both
testified that they saw Dyer’s vehicle hit the curb.  The videotape of the stop was played for the
jury and shows Dyer pointing to his vehicle several times while talking to the
officers; the videotape did not have audio.  Both officers were cross-examined about what
Dyer was saying as he pointed to his tires; Officer Timmons recalled that he “guess[ed] [Dyer] didn’t think he struck the median,” and Officer
Gilmore testified that she
thought Dyer was trying to argue that there was no damage to his tires.
 Dyer’s
sole witness was his father, Dewayne Simpson Dyer.  He testified about his son’s various physical
and mental ailments, including his hearing loss, resulting speech problems from
his hearing loss, and an old injury to his knee.  The jury found Dyer guilty, and the trial
court assessed his punishment at 180 days in jail, probated for twenty-four
months, and a $750 fine.

III.  Article 38.23(a) Jury Instruction

 

In his sole point, Dyer argues the trial court erred
by not including an article 38.23(a) instruction in the jury charge because a
fact issue existed regarding whether his vehicle struck the curb, which was the
reason the officers stopped him.  Dyer
acknowledges that he did not request an article 38.23(a) instruction, but he
argues that the trial court’s failure to sua sponte include such an instruction caused him to suffer
egregious harm.

A.  Standard of
Review

Appellate
review of error in a jury charge involves a two-step process.  Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d 23, 25–26 (Tex. Crim. App.
2009).  Initially, we must determine
whether error occurred.  If it did, we
must then evaluate whether sufficient harm resulted from the error to require
reversal.  Abdnor,
871 S.W.2d at 731–32.

If there
is error in the court=s charge but the appellant did not
preserve it at trial, we must decide whether the error was so egregious and
created such harm that the appellant did not have a fair and impartial trialCin short,
that Aegregious
harm@ has
occurred.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g); see Tex. Code Crim.
Proc. Ann. art. 36.19 (Vernon 2006); Allen v. State,
253 S.W.3d 260, 264 (Tex. Crim. App. 2008); Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996). 
Egregious harm is the type and level of harm that affects the very basis
of the case, deprives the defendant of a valuable right, or vitally affects a
defensive theory.  Allen,
253 S.W.3d at 264 & n.15; Olivas
v. State, 202 S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); Almanza, 686 S.W.2d
at 172.

In making
an egregious harm determination, Athe actual
degree of harm must be assayed in light of the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.@  Almanza, 686
S.W.2d at 171; see generally Hutch, 922 S.W.2d
at 172–74.  The purpose of this review is
to illuminate the actual, not just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis.  Ellison v. State, 86
S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch, 922 S.W.2d
at 171.

B.  The Law Concerning an Article 38.23(a) Jury
Instruction

Article
38.23(a) provides that no evidence obtained by an officer or other person in
violation of the laws or constitutions of Texas or the United States shall be
admitted in evidence against the accused on the trial of any criminal
case.  Tex. Code Crim.
Proc. Ann. art. 38.23(a).  It also provides that when the legal evidence
raises such an issue, the jury shall be instructed that if it believes, or has
a reasonable doubt, that the evidence was obtained by such a violation, then it
shall disregard any such evidence.  Id.

A
defendant’s right to the submission of jury instructions under article 38.23(a)
is limited to disputed issues of fact that are material to his
claim of a constitutional or statutory violation that would render evidence
inadmissible.  Madden v. State, 242 S.W.3d 504, 509–10
(Tex. Crim. App. 2007).  A defendant must
meet three requirements before he is entitled to the submission of a jury
instruction under article 38.23(a): (1) the evidence heard by the jury must
raise an issue of fact; (2) the evidence on that fact must be affirmatively
contested; and (3) that contested factual issue must be material to the
lawfulness of the challenged conduct in obtaining the evidence.  Id. at 510.

In order
for there to be a conflict in the evidence that raises a disputed fact issue,
there must be some affirmative evidence in the record that puts the existence
of that fact in question.  Id. at 513.  If a defendant successfully raises a factual
dispute over whether evidence was illegally obtained, inclusion of a properly
worded article 38.23 instruction is mandatory. 
Bell v. State, 938 S.W.2d 35,
48 (Tex. Crim. App. 1996), cert. denied,
522 U.S. 827 (1997).

C.  Disputed
Issue of Material Fact 

In this
case, although Officers Timmons and Gilmore testified unequivocally that they
witnessed Dyer swerve and strike the curb on the center median, their
testimony, along with the videotape of the stop, demonstrates that Dyer
disputed that he hit the curb.  Dyer can
be seen on the videotape pointing to his truck several times during the
conversation with the officers, and after their discussion, Officer Gilmore
approached Dyer’s car and briefly shined her flashlight on the driver’s side tire.
 Officer Timmons explained Dyer’s
pointing on the video—“I guess he didn’t think he struck the median, but, like
I said, both of us were in the car and observed it right in front of us.”  During Officer Gilmore’s cross-examination,
the following exchange occurred:

Q.  All right. 
And in the video, did you see the - - I guess you haven’t seen the
video, but during the interaction with Mr. Dyer, did he ever point to his tires
and try to get you to go over and look at his tires to show you that there was
no damage whatsoever to his tires?

 

A.  I think he was trying to make that argument,
yes.

 

The
question we must answer is whether the videotape and the officers’ testimony
about the videotape created “some affirmative evidence of ‘did not [hit the
curb]’ in the record” to create a disputed fact issue for the jury to resolve.  See
Madden, 242 S.W.3d at 514.  The court of criminal appeals’ opinion in Reynolds v. State is instructive.  See 848 S.W.2d 148, 148–49 (Tex. Crim. App. 1993).  In that case, the officer who stopped
Reynolds for speeding testified that Reynolds “told [the officer] he did not
think he was going ‘that fast’ and he was going to contest the speeding ticket.”  Id. at 148.  Reynolds’s
brother, a passenger in the car, testified that he did not think Reynolds had
been speeding and that Reynolds himself did not think he had been speeding.  The court of criminal appeals held,

While it is true that
appellant’s own perception of his speed is not dispositive, his perception does
fairly raise an issue that he was not speeding in fact. If, in turn, the jurors
believed that appellant was not in fact speeding, they would then be forced to
conclude that the officer’s testimony was either mistaken or incredible. And,
although a conclusion that the officer was mistaken would not affect the
legitimacy of his stopping appellant, a conclusion that he was lying would.
Consequently, appellant’s perception of his own speed was relevant . . . because
it did “have a[] tendency to make the existence of a[]
fact that is of consequence to a determination of the action [i.e., whether the
officer was telling the truth] more probable . . . than it would [have] be[en]
without the evidence.” Tex. R. Crim. Evid.
401.

 

Id. at 149.  Thus, the court held that Reynolds was
entitled to an article 38.23(a) instruction because there was conflicting
evidence from which the jury could have concluded that the officer was lying,
which would have affected the legitimacy of the officer’s stop.  Id.

Here, like
in Reynolds, evidence was presented—through
the officers’s testimony and through the videotape of
the stop—that Dyer disputed whether he had hit the curb.  This evidence conflicted with the officers’s testimony that they saw Dyer hit the curb, which
was the sole reason that they stopped him.[2]  Had the jury believed the contrary evidence
and believed that the officers were not credible, the stop would not have been
justified.  See id.  Consequently, the
trial court erred by not including an article 38.23(a) instruction in the jury
charge.  See Tex. Code Crim. Proc. Ann. art.
38.23(a); Reynolds, 848 S.W.2d at
149; see also Stone v. State, 703
S.W.2d 652, 655 (Tex. Crim. App. 1986) (finding error when appellant and her
witness testified that appellant was driving in a prudent manner and was not
weaving on the roadway, contrary to officer’s testimony), overruled on other grounds by Atkinson v. State, 923 S.W.2d 21, 25
(Tex. Crim. App. 1996).

D. 
Egregious Harm

Having
found error, we must conduct a harm analysis. Because Dyer never presented the
trial court with a proposed jury instruction, we will review the error for
egregious harm.  See Almanza, 686
S.W.2d at 171.

1.  The Entire Jury Charge

We first review the degree of harm in light of the
entire jury charge.  See id.  The charge contained
general language regarding the presumption of innocence; the burden of proof;
the defendant’s right not to testify; and the jury’s role as the exclusive
judge of the facts, the credibility of the witnesses, and the weight to be
given the testimony.  The charge
instructed the jury to acquit Dyer if it had a reasonable doubt as to his guilt.  However, the jury was not instructed to
resolve the disputed fact issue that either justified or invalidated the
officers’ stop of Dyer.  If properly
instructed, the jury would have been required to disregard the evidence
obtained during the stop if it believed that the officers’ testimony that they
saw Dyer hit the curb was not credible.  See Hutch, 922
S.W.2d at 172–23; Reynolds, 848
S.W.2d at 149; see also Terry v. Ohio, 392
U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968) (holding that an automobile stop is
justified when an officer has reasonable suspicion to believe that a traffic
violation has occurred); Woods
v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (same).

2.  The State of the Evidence

We next examine the harm in light of the state of the
evidence, including the contested issues and weight of probative evidence.  See Almanza, 686 S.W.2d at 171.  The issue of whether Dyer’s
vehicle struck the curb was contested at trial, and as we explained above, the
jury was allowed to consider evidence that the officers obtained as a result of
the stop without first determining a fact issue related to the legitimacy of
that stop.  See Hutch, 922 S.W.2d at 172–73 (“Whether
appellant was to be convicted depended upon whose testimony the jury found
credible.”); see also Terry, 392 U.S. at
21–22, 88 S. Ct. at 1880; Woods,
956 S.W.2d at 35.

3.  The Arguments of Counsel

The bulk of the arguments were devoted to the issue of
whether Dyer was intoxicated, not whether the stop was legal.  The State’s closing argument primarily
addressed whether Dyer had lost the normal use of his mental or physical
faculties due to intoxication, rather than due to his various physical
ailments.  The State did point out that
the reason for the initial stop was that Dyer had jumped the curb.  Defense counsel did
not expressly contest the legality of the stop in his closing arguments, but he
did discuss the video in which Dyer can be seen pointing at his tires and
criticized the officers for not inspecting the tires for damage.  Defense counsel argued that it “all comes down
to simply what you believe in terms of the testimony and the credibility of
that testimony.”  But jury arguments are
not evidence, the jury may not consider them as such, and they do not serve to
instruct the jury on the law.  See Hutch, 922 S.W.2d at 173.

4.  Egregious Harm

Viewing the jury charge as a whole, considering the
state of the evidence and the fact that the reasonable suspicion for the stop
was based solely on a contested fact issue, and reviewing the arguments by
counsel, we conclude that Dyer suffered egregious harm.  Consequently, we sustain Dyer’s sole point.

IV. 
Conclusion

Having
sustained Dyer’s sole point, we reverse the trial court’s judgment and remand
the case for proceedings consistent with this opinion.

 

 

SUE WALKER
JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 16, 2010











[1]See Tex. R. App. P. 47.4.





[2]The
State argues that the officers stopped Dyer because they saw him commit two separate
driving infractions—swerving within his lane (toward the left side of the lane)
and striking the curb.  Consequently, the
State argues that because Dyer did not dispute both bases for the stop, he was
not entitled to an article 38.23(a) jury instruction.  See, e.g., Doyle v. State, 265 S.W.3d 28, 33–34 (Tex. App.—Houston [1st Dist.]
2008, pet. filed) (holding defendant not entitled to instruction regarding whether
or not he failed to maintain a single lane or weaved into the oncoming lane
when he testified as to why he weaved but did not dispute that he did, in fact,
weave); Sledge v. State, No.
05-93-00667-CR, 1994 WL 247961, at *2 (Tex. App.—Dallas June 9, 1994, no pet.)
(not designated for publication) (holding defendant
not entitled to article 38.23(a) instruction when he disputed officer’s
testimony that he was weaving but did not dispute officer’s testimony that he
changed lanes without signaling).  However, both Officer Gilmore’s and Officer
Timmons’s testimony establish that they stopped Dyer for a single driving
infraction—striking the median.  In fact,
Officer Timmons explained that it was not possible for a truck the size of
Dyer’s truck to swerve to the left without hitting the curb.  Thus, here, swerving left was not a separate
basis for the stop, but it was part and parcel of Dyer’s single action in
moving to the left in his lane and striking the curb; if Dyer did not strike
the curb, he did not swerve left.