**Opinion issued April 14, 2016**



In The

# Court of Appeals

For The

## First District of Texas

———————————————

### NO. 01-15-00116-CR

———————————————

**WILLIAM CORMAC QUINN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1447517**

---

## MEMORANDUM OPINION

Appellant, William Cormac Quinn, appeals from a guilty plea for possession of a controlled substance with intent to deliver in which the trial court sentenced him to two years of deferred adjudication pursuant to a plea agreement. In two issues on appeal, appellant argues that the trial court erred by (1) denying his

motion to suppress and (2) excluding appellant's evidence during the suppression hearing.

We affirm.

## BACKGROUND

On June 3, 2014, Harris County Constable J. Abram pulled over appellant for two traffic violations. According to his affidavit, Abram observed appellant's vehicle with a defective left turn signal and a parking pass hanging from the rearview mirror that was obstructing appellant's view.[1] After pulling appellant's vehicle over, Abram smelled a strong odor of marihuana coming from the vehicle and saw a marihuana grinder in the back seat in plain view. After asking appellant to exit the vehicle, Abram observed that appellant's breathing was heavy and erratic. While appellant and his passenger sat in Abram's patrol car, Abram retrieved the grinder and noticed that it contained a "green leafy substance" which he knew to be marihuana. He then placed appellant under arrest and searched the car. He found additional marihuana in the car, and he located a white powdery substance in the passenger side door that tested positive for cocaine. He also discovered $4,501 in cash in the vehicle.

---

[1]	The State did not argue at the motion to suppress hearing that the parking pass was a traffic violation. The State also does not assert any argument on appeal in regards to the parking pass.

2

Before trial, appellant filed a motion to suppress. After considering affidavits, dash-cam footage from Abrams's patrol car, and trial testimony, the trial court denied appellant's motion to suppress. The trial court gave appellant permission to appeal those matters that were raised by written motion and ruled on before trial. *See* TEX. R. APP. P. 25.2(a)(2).

## MOTION TO SUPPRESS

In his first issue on appeal, appellant argues that the trial court abused its discretion in denying his motion to suppress.

**Standard of Review**

In reviewing the trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Blake v. State*, 125 S.W.3d 717, 722 (Tex. App.— Houston [1st Dist.] 2003, no pet.). We give almost total deference to the trial court's determination of historical facts that depend on credibility, while we conduct a de novo review of the trial court's application of the law to those facts. *Carmouche*, 10 S.W.3d at 327. The trial court is the sole judge of the credibility of the witnesses and decides the weight to give their testimony. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

When a trial court makes express findings of fact, we view the evidence in the light most favorable to this ruling and determine whether the evidence supports

these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's application of the law to the facts de novo, and will sustain the ruling if it is supported by the record and is correct on any theory of law applicable to the case. *Id*. at 447–48.

A "stop" by a law enforcement officer "amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche*, 10 S.W.3d at 328. However, a law enforcement officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328. To stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. Instead, an officer must have "reasonable suspicion" that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see also Doyle v. State*, 265 S.W.3d 28, 31 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("An officer may stop a driver if he has reasonable suspicion that a traffic violation was in progress or had been committed."). Reasonable suspicion exists when the officer has some minimal level of objective justification for making the stop; in other words, when the officer can "point to specific and articulable facts which, taken together with rational inferences from

4

those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *see also Alabama v. White*, 496 U.S. 325, 329–30, 110 S. Ct. 2412, 2416 (1990). We disregard the subjective belief of the officer in our reasonable suspicion analysis and consider the totality of the circumstances objectively. *Ford*, 158 S.W.3d at 492–93. The State need not show that appellant actually committed a traffic offense, but only that the officer reasonably suspected that appellant was committing an offense. *See Madden v. State*, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007).

It is well-established that an officer may lawfully stop an individual for a traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). Section 547.324 of the Texas Transportation Code provides that vehicles must have turn signal lamps that are visible in normal sunlight at a distance of at least 300 feet from the front and rear of the vehicle if the vehicle is less than 80 inches wide.[2] *See* TEX. TRANSP. CODE ANN. § 547.324 (West 2011).

**Reasonable Suspicion**

At the hearing on the motion to suppress, the trial court heard evidence that on the afternoon of the offense, Abram saw appellant's vehicle on a clear, sunny day. He testified that when he saw appellant turn on a street, his turn signal was not completely visible. He testified that he was 50 feet behind appellant, and that

---

[2] Appellant's affidavit stated that his vehicle is 68 inches wide.

5

he could not clearly see appellant's turn signal. Abram stated that at that point, he had reasonable suspicion to make a traffic stop. He repeated that the signal was very faint, and that after appellant stopped and activated his hazard lights, Abram could tell that the left turn signal was very faint.

Abram's affidavit likewise stated that he was drawn to appellant's vehicle because "it had a defective left turn signal. . . ." He further stated that appellant's "left turn signal was defective because it was not visible in normal sunlight from at least 300 feet from the back of his vehicle. When I approached Defendant's vehicle at a much closer range, I noticed the left turn signal was much dimmer than the right turn signal. The turn signal was defective and not visible from the required distance."

On cross-examination, Abram testified that the dash-cam video showed that appellant's turn signal was operating, but at the time of the initial traffic stop, he did not see it working. Abram admitted that appellant properly signaled his turn. He also admitted that he did not see appellant's turn signal at a distance of 300 feet.

Appellant submitted an affidavit in which he stated that he verified that his turn signal bulbs were working properly and that the lights could be seen from 300 feet. Appellant also stated that he did not violate any traffic laws while being followed by Abram. Appellant's father testified that after his son's arrest, he tested

6

the turn signal, which was working properly. He also viewed the turn signal from a distance of 300 feet and testified that it was clearly visible.

The trial court denied the motion to suppress and stated the following findings and conclusions:

> I find Deputy Abram to be credible with regards to his testimony and the observations that he made on the date of this offense. I believe the testimony, or he articulated testimony that indicated that he believed the Defendant had violated the Transportation Code and that the taillight was not visible from a distance of 300 feet. The video supports the conclusion that the officer made. The video that I have had an opportunity to review shows that the light on one taillight did not illuminate as brightly as the other side, in support of the officer's belief that there was a defective taillight.

> Certainly I believe that that belief, and I find that the facts support the belief. And I make the following legal conclusions: I find that the officer had a reasonable suspicion to believe that the Defendant had violated the Transportation Code, and I believe that the officer then had a right to temporarily detain the Defendant to further investigate that violation. The evidence also, in reviewing the affidavits, supports the fact and there is no dispute that when the officer approached the vehicle, he smelled an odor of marijuana. He then searched—and I believe saw a marijuana grinder in plain view. He then searched the vehicle and recovered the cocaine.

> Therefore, I find that the search was legal and proper and occurred after the officer had reasonable suspicion to stop the Defendant's vehicle.

As the sole judge of the credibility of the witnesses, the trial court could have disregarded appellant's claim that his turn signal was working by instead

7

crediting the officer's testimony. *See Villarreal*, 935 S.W.2d at 138. Viewing the evidence in a light most favorable to the trial court's ruling, the evidence supports the trial court's finding that Abram could not see that appellant's turn signal was adequately visible from 50 feet, let alone 300 feet. The trial court could have discounted appellant's testimony as well as the testimony from appellant's father and instead relied on the dash-cam video, which showed that the turn signal, although blinking, was difficult to see compared to the other lights on the vehicle. The trial court's determination that Abram saw appellant driving a car without using visible turn signals at a distance of 300 feet is supported by evidence in the record. *See State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011) (concluding that officer's testimony regarding observations of traffic violation supported legal conclusion that "there existed at least a reasonable suspicion that a traffic infraction had occurred"); *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007) (holding that officer's observation of illegal lane change provided sufficient objective, articulable facts to support finding of reasonable suspicion that driver committed traffic violation by failing to signal his lane change); *see also* TEX. TRANSP. CODE ANN. § 547.324 (requiring turn signal lamp to be visible 300 feet from rear of vehicle). We therefore hold that the trial court did not abuse its discretion in denying appellant's motion to suppress.

We overrule appellant's first issue on appeal.

## EXCLUSION OF EVIDENCE

In his second issue on appeal, appellant argues that the trial court erroneously excluded appellant's homemade video taken of his vehicle and its turn signal lights after the offense.

The State asserts that we have no jurisdiction to address this issue because appellant pleaded guilty and the punishment did not exceed the punishment recommended by the prosecutor and therefore appellant only had permission to appeal the matters raised by written motion filed and ruled on before trial. *See* TEX. R. APP. P. 25.2(a)(2). The State contends that appellant can only appeal his written motion to suppress.

The trial court's certification of defendant's right of appeal states that this criminal case "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal." Likewise, Rule 25.2(a)(2) provides that "in a plea bargain case . . . and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal only: those matters that were raised by written motion filed and ruled on before trial, or after getting the trial court's permission to appeal." TEX. R. APP. P. 25.2(a)(2)(A)(B).

Appellant did not file a pre-trial written motion to admit his video. Rather, the trial court overruled the admission of the evidence during the motion to

9

suppress hearing. Because this issue was not raised by written motion filed and ruled on before trial, and the trial court did not grant permission to appeal its ruling, we do not have jurisdiction to consider it. *See* TEX. R. APP. 25.2(a)(2)(A).

We dismiss appellant's second issue on appeal.

## CONCLUSION

We affirm the judgment of the trial court.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. *See* TEX. R. APP. P. 47.2(b).