# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00033-CR

**Michael Marrero, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2013 CR 0098, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, appellant Michael Marrero pleaded guilty to the misdemeanor offense of driving while intoxicated.[1] The trial court assessed punishment at 365 days' confinement in the Comal County Jail but suspended imposition of the sentence and placed Marrero on community supervision for a period of 15 months. In a single issue on appeal, Marrero asserts that the trial court abused its discretion in denying his motion to suppress. We will affirm the judgment of conviction.

## BACKGROUND

Marrero was arrested for driving while intoxicated following a traffic stop. In his motion to suppress, Marrero asserted that the traffic stop was illegal because, in his view, the

---

[1] *See* Tex. Penal Code § 49.04.

arresting officers did not have reasonable suspicion to believe that he had committed a traffic offense. At the hearing on the motion to suppress, the trial court heard testimony from the arresting officers, Deputy Gabriel Sepeda and Corporal Eric Lehr of the Comal County Sheriff's Office. Sepeda testified that on the night of May 28, 2012, he and Lehr were driving north in their patrol vehicle on FM 306 in Comal County. When asked to describe the roadway, Sepeda testified that "it was one lane both ways with a center divider, a double yellow line." At approximately midnight, Sepeda testified, he and Lehr observed a car in front of them "kind of moving over to the shoulder" of the road in what appeared to them to be an evasive maneuver to "avoid" something, even though Sepeda saw no debris on the road. Immediately thereafter, Sepeda recounted, he noticed a vehicle in the opposite lane of traffic, driving south, toward their vehicle. According to Sepeda, "As the car approached, it looked as if he was going to come in our lane; he kind of—his tires touched the double yellow line, the center divider, which made me have to swerve out of the lane." Sepeda added that he believed the vehicle almost struck the driver's side of his vehicle and that "probably half of his tire crossed into my lane as he was passing." Lehr similarly testified that the vehicle "was coming towards our lane, like almost into our lane." However, when asked if he had seen the vehicle "actually cross" into their lane, Lehr testified that he had not. But he added that "[t]he vehicle was right on the line. You could mostly see the headlights and not the vehicle, but it was very close to coming, and we actually had to do an evasive move also."

Shortly thereafter, Sepeda made a u-turn and began to follow the car that had passed them, for the purpose of "observing [its] driving habits." Sepeda summarized his observations as follows: "The speed limit on that road and around that area is 55 miles an hour, and he was driving

2

at least ten under.  As we kept going, his speed kind of fluctuated, either plus or minus, a few miles per hour.  A couple of times he did not completely cross over the center divider, but he did brush it and ride on it a couple of times.  He just—it was just back and forth between his lane.  He never crossed the solid white line onto the shoulder, it was just more of the fact that he kept brushing the center divider."  Sepeda also characterized the vehicle's movement as "drifting back and forth" within its lane of traffic.  Lehr similarly testified that the car "was very unsteady within the traffic lanes, going towards the left, towards the center divider and then towards the right several times, towards the right shoulder."  Lehr also testified that the vehicle's speed "was not constant.  It didn't have a great fluctuation, but it wasn't a constant speed as most vehicles maintain."  After following the vehicle for several minutes, the deputies initiated a traffic stop.  During the stop, the driver of the vehicle was identified as Marrero.

A video recording of the traffic stop, taken from the patrol vehicle's dashboard camera, was also admitted into evidence.  The video depicted Marrero's car passing the patrol vehicle and subsequently being followed and then pulled over by the deputies.  Sepeda testified that because of the limited view of the front-facing video camera in their car, the recording did not show Marrero's vehicle cross the yellow line as it was passing the patrol vehicle. Sepeda explained, "[W]hen he first passed us, what you can't see is when I moved over as he got probably to between my front door and rear door, he came pretty much into my lane.  That's why I moved over.  And if you watch the video from the beginning, you see me move over and kind of swerve, where I went out and came back in.  You only catch from my in-car video where he started to brush the line, but you don't catch where he got completely on the line as he was passing us."

3

At the conclusion of the hearing, the trial court denied the motion to suppress. Subsequently, the trial court made the following findings of fact:

1.  The testimony given by Deputy Sepeda is credible.

2.  The testimony given by Deputy Lehr is credible.

3.  There was another vehicle on the road traveling north ahead of the Deputies' patrol vehicle that was observed by the Deputies to swerve to the right hand side of the road as the Defendant's vehicle passed it traveling south.

4.  Deputy Sepeda saw the Defendant's vehicle cross over the center line as the vehicles passed each other, specifically as the Defendant's vehicle passed the driver's door of the Deputies' patrol vehicle.

5.  The in-car video did not capture the Defendant's vehicle crossing the center line because the Defendant's vehicle had moved past the angle of view of the camera when he crossed the line.

6.  Deputy Sepeda had the best point of view to witness the Defendant's vehicle cross the center line as he was in the driver's seat and closest to the Defendant's vehicle.

7.  Deputy Sepeda believed the Defendant's vehicle would have side-swiped the Deputies' patrol vehicle if Deputy Sepeda had not taken evasive action.

8.  Deputy Sepeda swerved to the right hand side of the road to avoid being struck by the Defendant's vehicle.

9.  Deputy Sepeda then performed a u-turn and caught up with the Defendant; the Deputies followed behind the Defendant's vehicle.

10. The Deputies did not immediately initiate a traffic stop because they were trying to determine if the driver had been momentarily inattentive or if he was intoxicated.

11. During the time the Deputies were following the Defendant, they observed the Defendant's vehicle to drift back and forth within his lane, drive on to, but not cross over the center line, and fluctuate in speed.

4

Based on the above findings, the trial court made the following conclusions of law:

1.      Reasonable suspicion existed that the Defendant had committed a traffic violation by failing to maintain a single lane of travel.

2.      Reasonable suspicion existed that the Defendant was driving while intoxicated because he crossed the center line, drifted within his lane, and was unable to control his speed.

3.      Weaving within a single lane and inconsistent speed were considered in a totality of the circumstances analysis.

After the trial court denied the motion to suppress, Marrero pleaded guilty to driving while intoxicated and the trial court sentenced Marrero as indicated above. This appeal followed.

## STANDARD OF REVIEW

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement."[2] We apply a bifurcated analysis, giving almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but reviewing questions of law de novo.[3] When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling.[4] When the trial court

---

[2] *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

[3] *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

[4] *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011) (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)).

makes findings of fact, as it did here, we determine whether the evidence supports those findings.[5]

We then review the trial court's legal rulings de novo unless the findings are dispositive.[6] "We will

sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on

any theory of law applicable to the case.'"[7]

## ANALYSIS

In his sole issue on appeal, Marrero asserts that the trial court abused its discretion

by denying his motion to suppress. Specifically, Marrero contends that the record does not support

the trial court's conclusions that the officers had reasonable suspicion to believe that Marrero

had committed either a traffic violation or the offense of driving while intoxicated so as to justify

the traffic stop.

A police officer may lawfully stop an automobile when that officer has reasonable

suspicion to believe that a traffic violation has occurred.[8] "Reasonable suspicion requires more

than a hunch; it exists only when an officer has specific, articulable facts that, taken together with

reasonable inferences from those facts, would lead the officer to reasonably conclude that the

---

[5] *Id.*

[6] *Id.*; *see also State v. Sheppard*, 271 S.W.3d 281, 291-92 (Tex. Crim. App. 2008) (explaining that factual findings consist of "who did what, when, where, how, or why" and "do not include legal rulings on 'reasonable suspicion' or 'probable cause'; those are legal conclusions subject to de novo review, not deference").

[7] *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (quoting *Dixon*, 206 S.W.3d at 590).

[8] *See Delafuente*, 414 S.W.3d at 177; *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Garza v. State*, 261 S.W.3d 361, 367 (Tex. App.—Austin 2008, pet. ref'd).

person detained is, has been, or soon will be, engaging in criminal activity."[9] However, "there is no requirement that a traffic regulation is actually violated; it is sufficient to show that the officer reasonably believed that a violation was in progress."[10] The reasonable-suspicion determination is an objective one made by considering the totality of the circumstances known to the officer at the time he initiated the stop.[11] "The standard is not what an omniscient officer would have seen, but rather what a reasonable officer would have done with what he actually did see."[12] A traffic stop will be deemed valid as long as a reasonable officer in the same circumstances as the detaining officer could have stopped the car for the suspected offense.[13]

Marrero first asserts that the record does not support the trial court's conclusion that the deputies had reasonable suspicion to believe that Marrero had violated section 545.060 of the Transportation Code, which provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely."[14] In order for a driver to violate that provision, there must be evidence that the driver, in addition to failing to stay

---

[9] *Delafuente*, 414 S.W.3d at 177 (citing *Ford*, 158 S.W.3d at 492).

[10] *Cook v. State*, 63 S.W.3d 924, 929 n.5 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Powell v. State*, 5 S.W.3d 369, 376-77 (Tex. App.—Texarkana 1999, pet. ref'd); *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.)).

[11] *See Delafuente*, 414 S.W.3d at 177 (citing *Ford*, 158 S.W.3d at 492-93).

[12] *State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013).

[13] *See Whren v. United States*, 517 U.S. 806, 809 (1996); *Hereford v. State*, 339 S.W.3d 111, 123 (Tex. Crim. App. 2011).

[14] Tex. Transp. Code § 545.060(a).

within a single lane of traffic, did so in an unsafe manner.[15] According to Marrero, there is no evidence in the record that Marrero's driving was unsafe. To the contrary, Marrero observes, Sepeda testified that the deputies decided to stop the vehicle "before it became unsafe," and Lehr testified that he did not consider Marrero's driving to be "unsafe toward other vehicles."

However, as the State argued at the suppression hearing below and again argues on appeal, section 545.060 is not the traffic provision at issue in this case. Instead, the relevant provision is section 545.051, which provides that "[a]n operator on a roadway of sufficient width shall drive on the right half of the roadway."[16] Pursuant to that provision, "[t]raveling across the yellow line into oncoming traffic is a traffic violation in itself and does not require the additional element of an unsafe maneuver by the driver as does [section 545.060]."[17]

In this case, Deputy Sepeda testified that he observed the tires of Marrero's vehicle "touch the double yellow line" on the roadway and that this action caused Sepeda to have to "swerve" out of the way of Marrero's vehicle. Sepeda added that he believed Marrero's vehicle almost struck the driver's side of his vehicle and that "probably half of his tire crossed into my lane

---

[15] *See Miller v. State*, 418 S.W.3d 692, 696-97 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.—Austin 1998, pet. ref'd).

[16] Tex. Transp. Code § 545.051(a).

[17] *Griffin v. State*, 54 S.W.3d 820, 823 (Tex. App.—Texarkana 2001, pet. ref'd); *see Johnson v. State*, 365 S.W.3d 484, 489 (Tex. App.—Tyler 2012, no pet.); *Bracken v. State*, 282 S.W.3d 94, 98-99 (Tex. App.—Fort Worth 2009, pet. ref'd); *Doyle v. State*, 265 S.W.3d 28, 32 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *see also Texas Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 878 (Tex. App.—Austin 1999, no pet.) (explaining that "drift[ing] over the white line adjoining two lanes of traffic flowing the same direction" implicates section 545.060, while "cross[ing] over the yellow line into a lane designated for oncoming traffic" implicates section 545.051).

as he was passing." Sepeda also testified that Marrero's vehicle "came pretty much into my lane" and that was why he had to move out of the way. The trial court found Sepeda's testimony to be credible, and we are to defer to that determination. Additionally, both Sepeda and Lehr testified that they observed the vehicle in front of their patrol vehicle swerve toward the shoulder of the road as Marrero's vehicle was passing it, which supports the trial court's finding that Marrero's vehicle had earlier crossed the yellow line when it was passing that vehicle. Moreover, on the video recording, after the deputies had turned around and were following Marrero's vehicle, its tires can be seen touching the yellow dividing line on multiple occasions. Viewing this evidence in the light most favorable to the ruling, we conclude that it supports the trial court's determination that the deputies had reasonable suspicion to believe that Marrero had committed a traffic violation.[18]

Moreover, even if the record did not support a finding that the deputies had reasonable suspicion to believe that Marrero had committed a traffic violation, the trial court also concluded that the deputies had reasonable suspicion to believe that Marrero had committed the offense of driving while intoxicated, which would also have justified the traffic stop.[19] Whether an

---

[18] *See* Tex. Transp. Code 545.051(a); *Johnson*, 365 S.W.3d at 489; *Bracken*, 282 S.W.3d at 98-99; *Doyle*, 265 S.W.3d at 32; *Griffin*, 54 S.W.3d at 823; *see also Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014) (noting that it is "not necessary that the reasonable suspicion relate to a specific criminal offense"); *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (noting that it is "not a sine qua non of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction"); *Nava v. State*, No. 05-14-00242-CR, 2015 Tex. App. LEXIS 6601, at *9-10 (Tex. App.—Dallas June 26, 2015, pet. ref'd) (mem. op., not designated for publication); *Gomez v. State*, No. 04-13-00607-CR, 2014 Tex. App. LEXIS 6235, at *2-4 (Tex. App.—San Antonio June 11, 2014, no pet.) (mem. op., not designated for publication); *Haize v. State*, No. 01-11-00253-CR, 2012 Tex. App. LEXIS 10123, at *8-14 (Tex. App.—Houston [1st Dist.] Dec. 6, 2012, pet. ref'd) (mem. op., not designated for publication).

[19] *See Foster v. State*, 326 S.W.3d 609, 613-14 (Tex. Crim. App. 2010); *Curtis v. State*, 238 S.W.3d 376, 380 (Tex. Crim. App. 2007).

officer has reasonable suspicion to stop a motorist for driving while intoxicated depends on the totality of the circumstances.[20] These circumstances include the time of day at which the suspect is driving, the location where the suspect is found, any observed instances of erratic driving, and the speed at which the suspect is driving.[21] Here, the evidence summarized above regarding Marrero's driving on or near the yellow dividing line, even if it did not support a finding that Marrero had committed a traffic violation, would support a finding that Marrero was driving erratically and even dangerously. Additionally, Sepeda characterized the vehicle's movement as "drifting back and forth" within its lane of traffic, while Lehr testified that the vehicle "was very unsteady within the traffic lanes, going towards the left, towards the center divider and then towards the right several times, towards the right shoulder." This "drifting" and "unsteady" movement can be seen throughout the video recording of the stop that was admitted into evidence. Also, both deputies testified that the vehicle's speed "was not constant" and "fluctuated" as they were following it, and Sepeda testified that Marrero was driving at least ten miles per hour below the speed limit. This evidence, when viewed in the light most favorable to the trial court's ruling, supports the trial court's conclusion that the deputies had reasonable suspicion, based on the totality of the circumstances, to believe that Marrero had committed the offense of driving while intoxicated and were justified in

---

[20] *See Foster*, 326 S.W.3d at 613-14; *Curtis*, 238 S.W.3d at 380.

[21] *See, e.g., Foster*, 326 S.W.3d at 613; *Curtis*, 238 S.W.3d at 380-81; *Kelly v. State*, 413 S.W.3d 164, 171 (Tex. App.—Beaumont 2013, no pet.); *Arthur v. State*, 216 S.W.3d 50, 55 (Tex. App.—Fort Worth 2007, no pet.); *James v. State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd); *Cook*, 63 S.W.3d at 929-30; *Gajewski*, 944 S.W.2d at 453.

stopping Marrero for that reason.[22]  On this record, we cannot conclude that the trial court abused

its discretion in denying Marrero's motion to suppress.

We overrule Marrero's sole issue on appeal.

**CONCLUSION**

The judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   January 14, 2016

Do Not Publish

---

[22] *See Foster*, 326 S.W.3d at 613; *Curtis*, 238 S.W.3d at 380-81; *Dowler v. State*, 44 S.W.3d 666, 670-71 (Tex. App.—Austin 2001, pet. ref'd).